E. MOCH COMPANY, Respondent, *v.* BRYANT PARK BANK, Appellant.

First Department, May 27, 1921.

Banks and banking — action to recover money deposited in name of plaintiff — bank may rely on certificate of secretary of depositor that president was also treasurer and had authority to draw checks — checks of plaintiff signed by third person as treasurer and deposited in defendant bank not notice of lack of authority — failure to show that plaintiff was damaged by alleged unauthorized deposit — laches — estoppel.

In an action to recover money deposited in the plaintiff's name in defendant bank it appeared that the plaintiff's then president opened the deposit through the vice-president of the defendant, that on the demand of said vice-president there was filed with the defendant a certificate executed by the plaintiff's secretary under the corporate seal which purported to set forth the minutes of plaintiff's board of directors some three years before the deposit was made and a resolution passed at that time stating that "Eugene Moch was duly elected president" and also as "treasurer" and "that all checks, notes and drafts and orders for the payment of money be signed by the president Eugene Moch, and countersigned by the treasurer Eugene Moch." It did not appear for whose benefit the money so deposited and checked out was used, whether for the benefit of the president personally or for the benefit of the plaintiff and there was no intimation that the secretary had any personal interest in the opening of the account. The account was closed about four years before this action was instituted.

*Held*, that the defendant was justified in relying on the certificate signed by the plaintiff's secretary bearing the seal of the plaintiff.

The defendant was not chargeable with knowledge of the lack of authority on the part of the plaintiff's president to sign checks as treasurer by the fact that the president, who had a personal account with the defendant, deposited checks of the plaintiff in that account which were countersigned by another person as treasurer of the plaintiff.

The plaintiff failed to show that it was actually deprived of moneys by reason of the alleged unauthorized deposit, and it did not explain why it waited nearly four years before it notified the defendant of the fact that the account had been improperly opened and why during that time it did not ascertain that the check with which the account was opened and which was the principal deposit, had been diverted and not deposited in its regular bank.

The issuance of the certificate by the secretary of the plaintiff that its then
president was its president and treasurer and authorized to sign its checks,
estopped plaintiff from denying the truth of the representation of its
secretary.

Appeal by the defendant, Bryant Park Bank, from a
judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York
on the 9th day of December, 1919, on the verdict of a jury
rendered by direction of the court, and also from an order
entered in said clerk's office on the 5th day of January, 1920,
denying defendant's motion to set aside the verdict and for
a new trial made upon the minutes.

*Benjamin L. Fairchild* of counsel [*James W. McElhinney*,
attorney], for the appellant.

*William Bondy*, for the respondent.

Greenbaum, J.:

The complaint alleges in paragraph III that between Sep-
tember 18 and December 6, 1908, defendant received moneys
of and belonging to the plaintiff to and for " the use of the
plaintiff, amounting in the aggregate to the sum of $15,180.35,"
which the defendant refused to pay to the plaintiff although
duly demanded.

Plaintiff called a single witness to compute the amount of
interest upon the claim and rested.

The evidence on behalf of the defendant uncontradictedly
establishes the following facts: When the account was opened
with the defendant bank its vice-president and cashier told
Eugene Moch, who was then president of the plaintiff cor-
poration, that no moneys could be withdrawn from the account
unless he first obtained a certificate from the plaintiff showing
who were authorized to draw against the account. A printed
blank form was handed to the plaintiff's president for the
purpose of having it filled out as a certificate of authority.

The certificate was duly filed with the defendant signed
by the plaintiff's secretary with the seal of the plaintiff cor-
poration. It purported to set forth the minutes of the
plaintiff's board of directors of December 31, 1905, and a

resolution passed on that date that " Eugene Moch was duly
elected president " and also as " treasurer " and " that all
checks, notes and drafts and orders for the payment of
money be signed by the president Eugene Moch, and counter-
signed by the treasurer Eugene Moch."

The signature card of the E. Moch Company was also
duly filed. The account was opened with a check of Sears,
Roebuck Company to the plaintiff in the sum of $13,238.44.
There were three other deposits thereafter made, the last one
being for $1,143.52 on December 1, 1908. On January 6,
1909, the account was closed by withdrawal of the balance
thereof. The returned vouchers were not produced upon the
trial, so that there was no evidence tending to show to whose
order the various checks upon the account had been drawn.
The case is also barren of proof as to whether or not the checks
drawn against the account were for the personal benefit of
Eugene Moch or for the company. It also appears that some
of the vouchers were returned by the defendant bank to the
secretary of the plaintiff corporation. At least the secretary,
who was called as a witness by the defendant, so testified at
one time and then afterwards said he was not sure about it,
although he admitted that he had receipted for returned
vouchers on January 22, 1909.

Defendant's receiving teller testified that each of the checks
drawn against the account was signed in the name of E.
Moch Company, by Eugene Moch, president and treasurer.
Eugene Moch, the former president of plaintiff corporation,
who was called as a witness by defendant, admitted that he
opened the account with the defendant bank and that he
received all the vouchers from the bank which had been drawn
against that account, and that every cent deposited had been
withdrawn. There was no attempt on the part of either of the
parties to examine him as to whether he personally used the
proceeds of the checks drawn against the account or as to
whether he had any benefit therefrom. Neither party to the
action seemed to be willing to probe the witness along those
lines. In this condition of the evidence each side moved for
a direction and the court thereupon directed a verdict for the
plaintiff in a sum of upwards of $25,000.

It seems to us that the defendant was justified in relying

upon the certificate concededly signed by the plaintiff's secretary bearing the genuine seal of the corporation. It is true that the certificate on its face refers to a meeting held in 1905, whereas the transactions in question took place in 1908. But when one considers how loosely private corporations, owned by a few individuals, are usually conducted, so far as holding meetings is concerned, and that the officers in such corporations continue in office for years, without annual re-elections, it cannot be said as matter of law that the defendant was put upon its guard because of the date of the resolution stated in the certificate. The secretary, who was not shown to have been unfaithful to the interests of the plaintiff, had certified that Moch was both president and treasurer at the time the certificate was signed. Under these circumstances, of whom could the defendant bank have inquired concerning the authority to open the account other than the plaintiff's secretary and its president, who was also its treasurer?

There is no suggestion that there was any other person of whom inquiry could have been made. There was evidence to the effect that Moch had a personal account with the defendant bank and that the checks deposited in that account were drawn upon the Union Exchange Bank by the plaintiff company to the order of E. Moch personally and that those checks were countersigned by one Brodie, as treasurer, who called at the plaintiff's place of business about once a week. It also was shown that it was the practice of the defendant bank when a corporation check was drawn in favor of one of its officers, to subject it to the special scrutiny of the office, meaning thereby to one of its officers.

Plaintiff argues that the fact that these checks were deposited with the defendant bank in Moch's personal account charged it with notice that Brodie was the treasurer of the corporation.

It is not claimed that any of the checks of plaintiff to the order of Eugene Moch deposited to his credit in his personal account with the defendant bank were not properly issued to him, nor is there any evidence that the defendant's vice-president who had to do with the opening of the account had any notice or knowledge of any of the checks deposited for Moch's personal account being countersigned by Brodie.

Indeed, he testified that he never observed any checks of the plaintiff with the signature of Brodie as treasurer. It would scarcely be expected under the circumstances disclosed and where the checks deposited in Moch's personal account were in fact of comparatively small amounts, that an executive officer would charge his mind with the name of the person who countersigned such checks.

We are of opinion that there should have been evidence on the part of the plaintiff showing that it actually was deprived of moneys by reason of the alleged unauthorized deposit. We also think that there should have been some explanation why plaintiff waited nearly four years before it notified the bank of the fact that the account had been improperly opened and a further explanation why during that period of years the plaintiff did not ascertain that the check for upwards of. $13,000 of Sears, Roebuck Company with which the account had been opened had been diverted and not deposited in the Union Exchange Bank which it was stated was its regular depository.

We are also of the opinion that the issuance of the certificate of the secretary of plaintiff, that Moch was its president and treasurer and authorized to sign its checks, estopped plaintiff from denying the truth of the representation of its secretary. (*New York & New Haven R. R. Co.* v. *Schuyler*, 34 N. Y. 30.) In that case the court said (at p. 68): " It is impossible to escape the conclusion that the law of this State, as settled by adjudication at this day, is, as put by H. R. SELDEN, J., in *Griswold* v. *Haven* [25 N. Y. 595] ' that where the authority of an agent depends upon some facts outside the terms of his power, and which, from its nature, rests particularly within his knowledge, the principal is bound by the representation of the agent, although false, as to the existence of such fact.' "

At page 73 the court said: " We may come back, therefore, to the solid ground of the *North River Bank* v. *Aymar* [3 Hill, 262] regarding it only as shaken down to greater firmness by the severe ordeal of the *Farmers and Mechanics' Bank* case* and with confidence declare the true doctrine of this branch

---

* *Farmers & Mechanics' Bank of Kent County* v. *Butchers & Drovers' Bank* (16 N. Y. 125). — [REP.

of the law of agency to be that where the principal has clothed his agent with power to do an act upon the existence of some intrinsic fact necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act of executing the power is itself a representation, a third person dealing with such agent in entire good faith pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice. * * * In this view, I see no ground upon which the plaintiffs can, in this case, be permitted to deny that Schuyler was acting within the scope of his authority in issuing the false certificates; and they are therefore to be treated as though issued by the board of directors."

At page 70 the court in the *Schuyler* case refers to the well-recognized rule that " ' Whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.' ".

In *Fifth Avenue Bank* v. *F. S. S. & G. S. F. R. R. Co.* (137 N. Y. 231), which was a case involving the issuance of a forged certificate of stock signed by the president, the court said (p. 237): " With respect to this certificate we fail to discover any omission on the part of the plaintiff which would impeach its character as a *bona fide* holder. It made inquiry at the office of the defendant, where its books and records were kept, and of the officer in charge, whose duty it was to furnish correct information upon the subject, and it had no reason to suspect that the assurances it received were misleading or false, or that the officers of the defendant had entered into a conspiracy with Hofele to defraud the public. It resorted to the only source of verification of the truth of Hofele's statements which was readily accessible; and it exercised all the care and vigilance which a prudent man would be expected to exhibit in the ordinary course of the business in which it was engaged."

This is not a case where the secretary of the corporation was individually interested in the transaction which resulted in the opening of the deposit account with defendant and where the latter knew or had reason to suspect that the plaintiff's secretary had any personal interest therein. (*Manhattan Life Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.,* 139 N. Y. 151.)

On the contrary, there is not here the slightest intimation that the secretary of the plaintiff, who issued the certificate in his official capacity, upon which defendant relied had any personal interest or benefit in the opening of the bank account with the defendant.

The judgment and order must be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.