(119 So. 625)

**ALABAMA POWER CO. v. BASS. (7 Div. 790.)**

Supreme Court of Alabama. Dec. 6, 1928.

Rehearing Denied Jan. 24, 1929.

588

Knox, Acker, Sterne & Liles, of Anniston, for appellant.

Rutherford Lapsley, of Anniston, and Longshore & Longshore, of Birmingham, for appellee.

BROWN, J. The substance of the averments of the first count of the complaint is that the defendant at the time of plaintiff's injury was engaged in operating a street railway along Fifteenth street in the city of Anniston, Ala., and, while plaintiff was standing in close proximity to defendant's car line at a regular stopping place near the intersection of Fifteenth street and Crawford avenue, the defendant, by and through its agent, servant, or employee, acting at the time within the scope of his duty and in charge of the operation of a street car, so negligently operated said street car that it was caused to run onto and strike against an automobile then and there crossing the car line, and knocked or forced the automobile against plaintiff, inflicting serious and permanent injuries to her person, causing her to suffer mental and physical pain, and to lose time from her employment; "that she suffered such damage and injury by reason of and as a proximate consequence of the negligence of the defendant, as aforesaid."

Count 2, as to inducement, is the same as count 1, with the additional averment that plaintiff was standing at a shed or depot provided for passengers, waiting to embark as a passenger on defendant's street car, followed with like averment as count 1 as to the causation and proximate cause of her injury and damage.

Count 3, as to inducement, is like unto count 2, and in addition avers that "defendant's said agent or servant acting within the line and scope of his duty, then and there operating one of defendant's cars approaching the place where plaintiff was standing

knew, or by the exercise of reasonable care should have known, that plaintiff was in the waiting shed in close proximity to the car line, and such agent or servant then and there wantonly, wilfully or intentionally ran said street car on to or against an automobile then and there crossing the car line, and knocked or forced the automobile against plaintiff."

The only objection made to these counts by demurrer, now urged, is that "it does not appear that either defendant or any of its agents, servants or employés knew that there was a probability that if the street car collided with the said automobile, the said automobile would injure plaintiff."

The argument here is, to quote from the brief: "It will be noted that the complaint does not aver that the street car came in direct contact with plaintiff's body, but only that it caused an automobile so to come in contact with plaintiff. This being so and there being no touching of the plaintiff's body by the instrumentality operated by the defendant, we submit that the injury would not be the proximate result of the negligence alleged, unless the defendant or its agent, servant or employé knew that there was a probability that the collision with the automobile would injure plaintiff."

The fallacy of this argument is apparent. The defendant had no exclusive or paramount right to the use of that part of the street occupied by its tracks, either as against other vehicles or pedestrians. B. R. L. & P. Co. v. Williams, 158 Ala. 381, 48 So. 93. That there was a reasonable probability that it would be used by other vehicles, and it was likewise reasonably to be anticipated that persons would be waiting at this stopping place to embark as passengers on the defendant's cars, or that pedestrians would there be using the streets, as they had a perfect right to do. "The logical rule in this connection, the rule of common sense and human experience as well, * * * is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind." Armstrong, Adm'x, v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349.

It was not necessary, as this argument seems to assume, that the defendant or its servants should be able to foresee the injury in the precise form in which it in fact resulted, or to anticipate the particular consequences which actually flowed from his or their acts or omissions of duty. 22 R. C. L. 125, § 12, note 8, and authorities therein cited. We are therefore of opinion that this ground of demurrer was properly overruled.

The sixth count pleads the existence of a city ordinance fixing the speed limit of street cars at 16 miles per hour, and making it unlawful for any "motorman, conductor or other person to propel or run any street car on, over or across any street within the city limits," at a greater rate of speed than fixed in the ordinance, and avers "that defendant's said agent or servant then and there operating one of defendant's cars approached the place where plaintiff was standing, and acting within the scope and line of his duty, propelled or ran said street car along Fifteenth Street at a higher rate of speed than sixteen miles per hour, to-wit, at the rate of twenty-five miles an hour, in violation of said city ordinance, * * * and plaintiff avers that said street car was then and there propelled and run on to and caused to strike against an automobile then and there crossing the car line and knocked or forced the automobile against plaintiff" (inflicting the injury and damage complained of), "and plaintiff avers that she suffered such damage and injuries by reason of and as a proximate consequence of the defendant's agent or servant running said car in violation of the city ordinance, as aforesaid."

Count 7, by like averments as to the causation of plaintiff's injuries and damages, ascribes such injuries to operating the street car in violation of an ordinance making it unlawful "for any person operating or running or having in charge the operation of any electric car on any street railway, to approach and cross any street or avenue without sounding the gong at least twenty feet before entering upon such crossing, and when there are people at or near such crossing, it shall be his duty to sound his gong repeatedly and until they have been advised thereby of the approach of such car," and avers that said injuries and damages resulted "as a proximate consequence of the defendant's agent or servant running said car in violation of the city ordinance, as aforesaid."

The appellant insists that error was committed in overruling grounds 2, 3, and 4 of the demurrer to the sixth count. The argument is, to quote from the brief: "For aught that appears the excessive speed may have had no effective connection whatever with the accident." The quoted averments of the complaint fully answer this argument. These averments not only show that the violation of the ordinance is a cause, but that it was the proximate cause of the injury. The manifest purpose of the ordinance was to protect persons and vehicles in the use of the street from dangers arising from operating street cars at a rate of speed in excess of 16 miles per hour, and its purpose was not only for the protection of these on the street or street car line, but for all who might come within the zone of danger arising from collisions resulting from operating street cars at an excessive rate of speed. Southern Ry. Co.

v. Williams, 143 Ala. 212, 38 So. 1013; A. G. S. R. R. Co. v. Chapman, 80 Ala. 615, 2 So. 738; Illinois Cent. R. R. Co. v. Camp, 201 Ala. 4, 75 So. 290.

■ The counts held defective in Merriweather v. Sayre Mining & Mfg. Co., 161 Ala. 441, 49 So. 916, one alleged that the rock fell and crushed plaintiff's intestate "by reason of the concurrent negligence of said agent," and the other that it fell upon him "as a consequence of said negligence," not the proximate consequence. There is clear distinction between causal connection and proximate cause. Causal connection may appear though the negligent act be the remote and not the proximate cause, but to constitute actionable negligence the plaintiff must not only show causal connection between the negligent act and the injury, but the negligent act must be the proximate cause. Decatur Co. v. Mehaffey, 128 Ala. 255, 29 So. 646; Western Ry. Co. v. Mutch, Adm'r, 97 Ala. 196, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179.

Where the act is one of omission, causation is established when the doing of the act would have prevented the result, though the omission of duty might not be the proximate cause. On the other hand, if the result would have happened just as it did, regardless of the omission of duty, the failure to perform the duty is not a factor, and causal connection would not appear.

The averments of the sixth count sufficiently show causal connection between the alleged negligent act of the defendant's servant, and that this negligence proximately caused the injury.

The ordinance pleaded in the seventh count is more narrow in its scope than that upon which the sixth is predicated. The imposed duty here is in respect to persons and vehicles approaching and crossing the tracks of the street railway at a street crossing. Yet, if a failure to observe this duty was a cause concurring with the act of the driver of the automobile, proximately causing plaintiff's injury, the defendant would be liable, although the driver of the automobile was also guilty of negligence. Hall v. Seaboard Air Line Ry. Co., 211 Ala. 602, 100 So. 890; Western Ry. Co. v. Sistrunk, 85 Ala. 352, 5 So. 79; Jones & Hooks v. Finch, 128 Ala. 217, 29 So. 182; Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 87 So. 205; 22 R. C. L. 128, §§ 15–16; 45 C. J. 920, § 485; Mathews v. K. C. Ry. Co., 104 Kan. 92, 178 P. 252; Solomon v. Branfman (Sup.) 175 N. Y. S. 835; McDonald v. Snelling, 14 Allen (Mass.) 290, 92 Am. Dec. 768.

■ The negligence charged being in respect to the automobile while crossing the defendant's tracks, count 7 was defective in not averring that the automobile was stricken while crossing the defendant's tracks at a street crossing. Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471.

■ However, the defect was not pointed out by the demurrer, and it was not subject to any of the stated grounds, and the demurrer was overruled without error. Code of 1923, § 9479.

The evidence is without dispute that the defendant's street car tracks are located along West Fifteenth street in the city of Anniston, the course of this street being east and west; that West Fifteenth street intersects with Crawford avenue leading off from Fifteenth street in a southwesterly direction. Whether or not Crawford avenue extends across West Fifteenth street to the north, the evidence is not clear. At the time of and immediately before the collision between the street car and the automobile of Jessie Hudson, the street car was moving in an easterly direction along West Fifteenth street, and the automobile was moving along the same street going west, facing the approaching street car. The photographs and map of the location where the collision occurred show a well-defined traveled way for vehicles moving along Fifteenth street leading across the defendant's tracks into Crawford avenue, east of the defendant's station or waiting shed for passengers, where the plaintiff was standing as a waiting passenger, when injured. The evidence shows that, instead of following this well-defined traveled way as it approached the place of the accident, the automobile followed what is referred to in the evidence as a trail, that leads across the street car tracks immediately east of the shed; that, after the street car had passed over the traveled way, it came in collision with the automobile at a point some few feet east of a line running from the southeast corner of the waiting shed; and there is evidence tending to show that, as a proximate consequence, the automobile swerved or skidded and struck the plaintiff who was standing at the northeast corner of the shed, with the result that plaintiff suffered serious injury.

This collision, with the resulting injury, occurred in the daytime between 3 and 4 o'clock in the afternoon, and the plaintiff offered evidence tending to show that the driver of the automobile did not know of the approach of the street car until immediately before the collision; that, though he was facing the street car, his vision was obscured by the shed and by the glare of the sun shining on his face; that he drove the automobile upon the track straddling the south rail of the car line for some distance before he reached the point of the collision.

The defendant, on the other hand, offered evidence going to show that the view was unobstructed by the shed; that the motorman observed the car approaching along West Fifteenth street for more than 100 yards before it reached the point of collision; that the automobile did not come upon the street car track until immediately before the collision, when it turned sharply in front of the

street car, and so near thereto that the collision could not be averted. However, the map offered by the defendant, showing the tracks made by the automobile immediately before the collision, drawn, as the evidence shows, to a scale of 10 feet to the inch, shows that the track nearest the street car tracks for from 25 to 30 feet was within approximately 15 inches of the south car track before it came upon the street car track; the automobile track as shown by the map beginning 65 or 70 feet east of the point of collision.

The evidence is in conflict as to the rates of speed the street car and the automobile were moving as they approached the place of collision. The evidence goes to show that the street car was moving from 5 to 20 miles per hour, and that the automobile was moving from 12 to 25 miles per hour. The evidence is also in conflict as to whether the motorman confronted, as the evidence tends to show he was, with imminent danger of a collision, sounded the gong with which the car was equipped for giving warning of its approach, and as to whether he resorted to prompt means to check the speed of the street car or to stop it until it was too late to prevent the collision. The motorman testified:

"* * * Just before I got in about 100 feet I guess beyond Crawford Avenue I shut off my current to coast around that curve there. I rung my bell at that time. It is what you call a rotary gong, and it rings almost a minute before you have to step on it any more. You give one tap with your foot and that starts it to ringing and it keeps ringing while it revolves. I looked at Schumacher station and saw this lady standing there on the ground at the west corner post with her face the way the car was going. She was standing there on the right hand side of the station with her hand on the post looking the way the car was coming and I rang my bell just before I got to Crawford Avenue, and I saw this automobile before I got to Crawford Avenue coming down 15th Street on the right hand side of the track, and he came on down on the right hand side of the track until he got in about 15 or 20 feet of this station and he came angling across the track towards the station. Well, I saw he was fixing to cut across the track and I applied my brakes, and I saw they wasn't going to take hold quick enough, and I pushed my lever around into emergency, and just as I put it in emergency he struck the right hand corner of my car, and as he struck the corner of my car he run on into the shed where this woman was standing, and from the time he struck my car he ran a distance of about 25 or 30 feet into the shed. My car ran something like 25 or 30 feet after the collision; something like a car length after it was struck. The brake has an air handle lever with three notches. The first notch is the service and the center notch that is called a lap, and on the extreme right hand is the notch for the emergency. You push it from left to right. I pushed it all the way round. In getting it from the operating position to emergency it has to go through the service brake. This is an air brake arrangement. It is all the same lever. When the lever goes to the emergency notch it puts on the full brakes, sands the track and knocks out the current by throwing the overhead switch out. In making this operation I paused at the service brake for just a second and saw that brake was not going to catch quick enough, and I shoved it into emergency. Ordinarily the emergency makes the quickest stop but the emergency may not work. It locks the wheels. It depends upon how much space you have got to stop in. When you lock them too tight it slides. I have seen them slide 75 or 100 feet. It depends on the condition of the track. I didn't wait any length of time after I got to the service brake before I went to the emergency brake. I just paused half a minute. Just as quick as I saw it wasn't going to take I shoved it right on to emergency. If you push it to the service notch if it is going to take hold it will stop right then. You can't tell whether it is going to stop any time. I put it there and then went right on into emergency. If you pause at the service brake as I showed, then go to the emergency, if the air takes hold in emergency there wouldn't be any danger of it sliding unless the track was slick wet. The service stop is sometimes as quick as the emergency stop and if the service will stop it will save the sliding. I knew this young lady when I saw her riding backward and forward on the car. I have hauled her as a passenger. Just as I cross Crawford Avenue she was standing nearly in front of me at the point of this station, and when I got in about ten feet of her I said, 'How do you do,' and nodded my head. I didn't wave. I didn't take my hand off the brake lever. When I first saw the automobile I would say he was about a block and a half away. There is no obstruction to prevent a man on the street railway from seeing a man in an automobile, and a man in an automobile from seeing the street railway from the time I entered the crossing until the time we came together. The station the way it is sitting is not in the way. It is kinder sitting cornerways the way that curve is. You can see all the way round there. There is nothing to prevent a man in an automobile from seeing a car for a block and a half. He stayed on the right hand side of the rail until he got within 15 feet of my car and he turned across. It would not have been possible to stop the car before striking him after he started to turn. I wasn't going over 10 miles an hour. I started coasting at least a hundred feet beyond Crawford Avenue. I stopped coasting when the emergency brake stopped me. I did not apply the current any

592

after I started coasting. It was still down hill up to the place where I struck him. There was no current on at all. When the emergency throws out the switch if the current is already off it just stays off. * * *

"I didn't slow up at all before I reached Schumacher station. I was coasting with no power. It was practically level. I first put on the emergency brake east of Crawford Avenue, before he hit me something like 8 or 10 feet. I was right about even with the east corner of the station when I put on the emergency brake. I had practically passed the station before putting the emergency brake on and had passed the girl. * * * I didn't ring the bell from the first time I saw the automobile. I saw it a block and a half before I got to it. When I got to Crawford Avenue going east I proceeded in face of the automobile and saw it all the time. I saw it turn across the track south before it reached the station about 10 or 15 feet before it reached the station, and I was watching it. * * * I made no attempt to stop it until I got 10 or 15 feet of it. When 8 or 10 feet away I put on the emergency brake. There wasn't any appreciable time between the time I put on the service brake. I ran about 4 or 5 feet during that interval."

The plaintiff testified that immediately before the collision the motorman spoke to her and waved his hand.

In the light of this evidence, plaintiff's case depends upon the negligence, or the wanton, willful, or intentional wrong, of the motorman in respect to the automobile, concurring with the negligence of the driver of the automobile in proximately causing plaintiff's injury. Illinois Central R. R. Co. v. Camp, 201 Ala. 4, 75 So. 290; A. G. S. R. R. Co. v. Chapman, 80 Ala. 615, 2 So. 738; B. R. L. & P. Co. v. Williams, 158 Ala. 381, 48 So. 93.

Therefore error cannot be affirmed in the action of the court in refusing the affirmative charge in respect to the case as a whole, or in refusing a like charge denying plaintiff's right to recover on the case as presented under counts 1, 2, 3, and 6 of the complaint.

We are of a different opinion as to count 7, which pleads the violation of the ordinance requiring the motorman to sound the gong in approaching and passing over street crossings. This ordinance, as we have heretofore pointed out, imposed a duty in respect to persons approaching and crossing at a street crossing. The evidence is here without dispute that neither Hudson, with his automobile, nor the plaintiff, was in the exercise of such right, but, to the contrary, Hudson was traveling along west Fifteenth street going toward the street car and directly facing it. Therefore the violation of the ordinance cannot stand as the proximate cause or even the cause of the injury. Western Ry. of Ala. v. Mutch, Admr., 97 Ala. 194, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Watts v. Montgomery Traction Co., 175 Ala. 102, 57

So. 471; B. & O. Ry. Co. v. Bradford, 20 Ind. App. 348, 49 N. E. 388, 67 Am. St. Rep. 252; Spicer v. Chesapeake & Ohio R. R. Co., 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385.

As the judgment of the circuit court must be reversed for the refusal of the affirmative charge as the seventh count of the complaint, we will content ourselves with stating general principles applicable to the case as presented on the other counts.

While the defendant company had the right to use its street car tracks in the operation of its cars, yet the law imposed on its servants the duty of exercising reasonable care to avoid injury to others in the use of the street. The motorman may assume that a person or vehicle on the track or in dangerous proximity thereto will turn aside so as to avoid a collision, yet this assumption cannot be indulged beyond the time the danger of collision with or by the street car becomes imminent. When it does, the duty rests upon him to use "a high degree of care, a degree commensurate with the circumstances of the particular case," such as sounding the alarm, applying the brakes, and using other means at hand to avoid a collision. B. R. L. & P. Co. v. Williams, supra.

In this case, if the defendant's motorman was guilty of negligence or wanton, willful, or intentional wrong, concurring and coalescing with the negligence of the driver of the automobile, and these proximately caused plaintiff's injury, she is entitled to recover, and the negligence of the driver of the automobile is in no sense a justification of the negligence of the defendant's servant. Eaton v. Boston, etc., R. Co., 11 Allen (Mass.) 500, 87 Am. Dec. 730; Hood & Wheeler v. Royal, 200 Ala. 607, 76 So. 965, and authorities cited supra. or, if the motorman was guilty of negligence, or wanton, willful or intentional wrong, proximately causing plaintiff's injury, the defendant would be liable, though Hudson was not negligent in the operation of the automobile.

On the other hand, if the motorman was not negligent or guilty of wanton, willful or intentional wrong, the plaintiff should not recover.

The defendant's objections to the ordinance, embodied in the Code of Ordinances of the City of Anniston, regulating the speed of street cars within the corporate limits, were not well taken and were overruled without error. Code of 1923, § 7687; L. & N. R. R. Co. v. Lloyd, 186 Ala. 119, 65 So. 153; Montgomery St. Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757.

The defendant's objections to the other ordinance requiring the sounding of a gong upon approaching and crossing a street crossing, in the absence of evidence that Hudson was crossing the tracks at a street crossing, were well taken, and the court erred in overruling said objections and admitting the ordinance in evidence.

We have examined all other questions arising on the admission of evidence, and find nothing upon which error may be affirmed.

For the errors pointed out, the judgment of the circuit court must be reversed, and it is so ordered.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.