BENJAMIN BENENSON, Respondent, v. NATIONAL SURETY COMPANY, Appellant, Impleaded with EDGAR SCHLESSENGER and Others, Defendants.

First Department, May 13, 1932.

*George de Forest Lord* of counsel [*Sherman Baldwin* and *Ernest D. North* with him on the brief; *Lord, Day & Lord,* attorneys], for the appellant.

*William Gilbert* of counsel [*Harold R. Medina* and *Eugene A. Sherpick* with him on the brief; *Medina & Sherpick,* attorneys], for the respondent.

MERRELL, J. The defendant National Surety Company is a domestic corporation authorized under the laws of the State of New York and by its charter to become and be accepted as surety or guarantor on all bonds, undertakings, recognizances, guaranties and other obligations required or permitted by law, and was and is duly licensed to engage in the business of insurance in the State of New York. According to the allegations of the complaint it is alleged that the defendant Straus Park Holding Corporation was and still is a domestic corporation, organized and existing under and by virtue of the laws of the State of New York. By the third paragraph of the complaint it is alleged that on or about June 13, 1929, Gilboa Realty Co., Inc., as lessor, and the said defendant Straus Park Holding Corporation, as lessee, entered into an agreement of lease whereby the said Gilboa Realty Co., Inc., leased to the Straus Park Holding Corporation the premises on the northwest corner of West End avenue and One Hundred and Sixth street, in the borough of Manhattan, New York city, for the period of twenty years, commencing June 1, 1929. It is further alleged in the complaint that in and by said agreement of lease the defendant Straus Park Holding Corporation undertook and agreed, at its own cost and expense, immediately to commence and prosecute to completion with all reasonable speed certain alterations and replacements in said premises, particularly provided for in certain plans and specifications agreed to by the parties, and that under said agreement of lease it was further provided that simultaneously with the execution of said lease said Straus Park Holding Corporation would deliver to said Gilboa Realty Co., Inc., the completion of the said alterations and replacements, and indemnifying the said Gilboa Realty Co., Inc., against any loss or damage in connection therewith. It is further alleged in the complaint that on or about June 13, 1929, in accordance with the provisions of said agreement of lease, the defendant Straus Park Holding Corporation, as principal, and the defendant National Surety Company, as surety, did execute under their hands and respective seals and did deliver to Gilboa Realty Co., Inc., as obligee, a bond bearing date that day for $100,000, conditioned that if the said defendant Straus Park Holding Corporation, as

lessee, should immediately start the said alterations and replacements provided by the terms and provisions of said lease and should fully complete the same in accordance with the plans and specifications therein referred to, and indemnify the lessor therein named, the Gilboa Realty Co., Inc., against any loss or damage in connection therewith, and pay the premium on said bond, then said bond was to be void; otherwise to remain in full force and effect; that said bond further provided that one Benenson Realty Company should advance to the principal at stipulated times during the progress of alterations certain sums of money upon the certificate of certain architects therein named, and in accordance with the terms of a certain building loan contract dated June 13, 1929, between said principal Straus Park Holding Corporation as borrower, and said Benenson Realty Company as lender, and contained the further provision that the obligee thereunder should notify the surety of any default on the part of the principal within twenty days of the time that such default should come to the knowledge of the obligee. It is further alleged in the sixth paragraph of the complaint that following the execution of said lease and following the execution and delivery of the said bond, the said Benenson Realty Company, as lender, duly advanced the moneys by it to be advanced to the Straus Park Holding Corporation, as borrower, and that the latter did enter into the possession of the demised premises and thereupon commenced work upon the alterations and replacements referred to in said lease, but that contrary to its obligations under said lease and in violation of the terms thereof, did fail, neglect and refuse to complete said alterations and replacements by it to be made, and that said Gilboa Realty Co., Inc., was thereby compelled to and did take over and complete said alterations and replacements, at a total cost and expense to it of a sum in excess of $140,000. By the seventh paragraph of the complaint it is alleged that thereafter Gilboa Realty Co., Inc., notified the defendant National Surety Company of said default on the part of Straus Park Holding Corporation in failing, neglecting and refusing to perform and complete the said alterations and replacements which it had agreed to make, and in failing to indemnify the said Gilboa Realty Co., Inc., and that said Gilboa Realty Co., Inc., gave notice to the National Surety Company within twenty days of the time that such default came to the knowledge of said Gilboa Realty Co., Inc., and performed all of the terms and conditions on its part to be performed by the agreement of lease and under said bond, and did thereupon call upon the defendant National Surety Company for and demand of the said defendant payment of the amount of the bond theretofore executed by it as surety, but that the said

National Surety Company has failed, neglected and refused to pay the amount of said bond or any part thereof, and that there is now due and owing on said bond the sum of $100,000.

In the third separate and distinct cause of action in the alternative against the defendant National Surety Company, which the said defendant, appellant, moved to strike out from the complaint, plaintiff repeats and realleges all of the allegations set forth in the first cause of action contained in the complaint as to the incorporation of the defendant, appellant, and of the defendant Straus Park Holding Corporation, as to the making of the contract of lease between Gilboa Realty Co., Inc., and Straus Park Holding Corporation, and as to the provisions thereof for the making by said Straus Park Holding Corporation of said alterations and replacements above mentioned, and of the agreement as to the execution of the bond in suit by the defendant National Surety Company, and also repeats the allegations contained in the first cause of action as to the default of the Straus Park Holding Corporation and of the completion of the work which said last-mentioned corporation had undertaken by the Gilboa Realty Co., Inc., at an expense exceeding $140,000. In said third cause of action the plaintiff then alleges that Gilboa Realty Co., Inc., duly notified the defendant National Surety Company of the default of its principal and of its failure to indemnify Gilboa Realty Co., Inc., as agreed in said lease and of the demand upon the National Surety Company for the payment of the amount of the bond aforesaid and of the latter's refusal to pay the same. Plaintiff then further alleges as follows:

" *Twenty-second.* That heretofore and on or about the 13th day of June, 1929, and apparently in accordance with the provisions of the agreement of lease dated that day there was delivered to Gilboa Realty Company, Inc., a certain bond, bearing date that day and more particularly described in the paragraph of this complaint designated ' *Fifth,*' purporting to have been executed by the defendant, National Surety Company, as surety, and purporting to be in compliance with the provisions of the agreement of lease of June 13th, 1929."

It is further alleged by plaintiff that the defendant National Surety Company now denies that said bond was ever issued by it and claims the same to have been a forgery and of no effect in law. Then, in the 24th paragraph of the complaint, it is alleged as follows:

" *Twenty-fourth.* That if said bond was a forgery, as now claimed by the defendant National Surety Company, the opportunity for such forgery to be committed was due and attributable to the carelessness and negligence of said defendant National Surety Company,

in permitting such fully executed forms and documents by which its bonds and undertakings are customarily authenticated to lie about and be exposed in its offices thereby rendering such forms and documents available to strangers and to those having no authority to make use of the same and thereby permitting, also, said strangers and said other persons to possess themselves of said forms and documents and by affixing the same to instruments bearing the title or designation of said defendant National Surety Company, to give to said instruments the semblance and appearance of being properly executed and duly authenticated instruments of said defendant."

And by the 25th clause of the complaint plaintiff further alleges:

" *Twenty-fifth.* That in accepting said bond Gilboa Realty Company, Inc., did exercise due and proper care and caution and did examine the same and in accepting said bond did rely upon the appearance of authenticity given to said instrument by the forms, documents and appearance of said instrument aforesaid."

Plaintiff then alleges that by reason of the premises set forth in said cause of action the Gilboa Realty Co., Inc., was damaged in the sum of $140,000. Plaintiff is the assignee of said Gilboa Realty Co., Inc., and alleges that it is now the owner and holder by assignment and transfer of the claim of Gilboa Realty Co., Inc., against the defendant, appellant.

The question presented by this appeal is as to the sufficiency of the said third separate and distinct cause of action set forth in the complaint. The court below held that the facts therein stated were sufficient to constitute a cause of action against defendant, and denied the defendant's motion to dismiss the same. We think the court was correct in denying the motion of the defendant, appellant. For the purposes of said motion, all of the allegations of said third cause of action must be deemed to be established. To summarize the allegations contained in said cause of action, it appears that on June 13, 1929, Gilboa Realty Co., Inc., plaintiff's assignor, was the owner of the leased premises in question, and that on or about that date the said owner leased said premises to defendant Straus Park Holding Corporation for a twenty-year term. It was provided in and by the lease that Straus Park Holding Corporation was to make certain improvements and alterations at its own cost and expense, and that the completion thereof was to be guaranteed by a surety company bond in the sum of $100,000, which was to be procured and delivered simultaneously with the execution of the lease. On the same day of the execution of the lease there was, in fact, offered to Gilboa Realty Co., Inc., by the defendant National Surety Company a bond drawn on its regular form in the amount of $100,000.

Upon the execution of the lease and the delivery of the bond in question Straus Park Holding Corporation entered into possession of the demised premises and commenced work upon the alterations and improvements mentioned in the lease. The work which it had thus undertaken was not completed, the Straus Park Holding Corporation defaulting in its obligation, with the result that it was necessary for the Gilboa Realty Co., Inc., to take up the work and complete the same at an expenditure of over $140,000. Thereupon the Gilboa Realty Co., Inc., called upon the National Surety Company to make good the loss which it had thus sustained. It was then for the first time disclosed that the said defendant, appellant, claimed that it had never executed the bond in question, but that the same was a forgery. By the 24th paragraph of the complaint setting forth the particulars of said third cause of action the plaintiff alleges, in effect, that if said bond was, in fact, a forgery as claimed by the defendant National Surety Company, the said National Surety Company was entirely responsible for the commission of said forgery, and that the same was directly attributable to its carelessness and negligence in permitting fully executed forms and documents upon which its bonds and undertakings are customarily authenticated to lie about and be exposed in its office, thereby rendering such forms and documents available to strangers and to those having no authority to make use of the same, and thereby permitting, also, said strangers and said other persons to possess themselves of said forms and documents and by affixing the same to instruments bearing the title or designation of said defendant to give to said instruments the semblance and appearance of being properly executed by said defendant. By the motion of the defendant the court was asked to strike out said cause of action as insufficient. It is the contention of the defendant, appellant, that the forgery of the bond in question constituted an intervening cause destroying the connection between the alleged negligence of the defendant, appellant, and the damages suffered by Gilboa Realty Co., Inc. The damages sustained by plaintiff's assignor were directly caused by the negligence of the defendant. So far as the allegation of the complaint is concerned, the negligence of the defendant is admitted. It is only urged by said defendant, appellant, that the act of forgery which the plaintiff assumes but does not concede was an intervening cause which served to break the chain of causation and, therefore, relieved the defendant, appellant, from liability. If there was a forgery in the execution of the document in question, such forgery in no way intervened between the alleged negligence of the defendant, appellant, but was, in fact, the very contingency reasonably to have been expected by defendant in leaving about duly authenti-

cated forms of its bonds. It is alleged in the complaint that through the carelessness of the defendant, appellant, and the carelessness of its employees the said defendant had left about and permitted to remain exposed in its office and subject to strangers certain fully executed forms and documents by which its bonds and undertakings were customarily authenticated, and it is alleged that relying wholly upon such authentication and apparent regularity of the instrument tendered to it, plaintiff's assignor accepted said bond and sustained injuries as the result thereof. We can see no break in the causal connection between defendant's negligence and the injuries sustained by plaintiff's assignor. When the defendant, appellant, permitted the bond in question to be duly authenticated as its own, it represented to plaintiff's assignor that such bond might be safely taken and accepted as its valid and binding obligation. The very act in so doing caused the injury which plaintiff's assignor sustained. The act of the forgery was, therefore, in no sense an intervening act. The forgery of the bond in question was the very act which the defendant was bound to guard against, and its failure to do so renders it liable for injuries resulting from such negligence. By the conduct of the defendant, appellant, it permitted the instrument which it now claims to be forged to be represented as " correct or genuine " and as " true or worthy of belief." (Century Dictionary — " authenticate.") The contention of the appellant that a criminal act will, in an action based upon negligence, usually break the chain of causation, is undoubtedly sound, but such is not the real test of the complaint here. In the dissenting opinion of Judge ANDREWS in *Saugerties Bank* v. *D. & H. Co.* (236 N. Y. 435), Judge ANDREWS stated as follows: " The mere intervention of a crime does not break the sequence of cause and effect if the crime might reasonably have been foreseen when the original default occurred." While this quotation is from a dissenting opinion, there was not disagreement therewith in the majority opinion of the court. The only disagreement was as to the application of that principle to the facts presented in that case. There are many authorities holding that an injury sustained is the proximate result of defendant's negligence, notwithstanding the presence of a criminal instrumentality by which the negligence was brought into effect. (*Fifth Ave. Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *Moch Co.* v. *Bryant Park Bank*, 197 App. Div. 78.) In the first case above cited the signature of the president of a corporation had been forged to a stock certificate for 160 shares of the stock of the corporation. The forgery was perpetrated by the defendant's secretary, who was at the same time the treasurer and transfer agent of the company, and had signed the certificate in those

capacities, clearly constituting a criminal act of forgery. The court, nevertheless, held that the corporation must respond to the plaintiff's damages, stating in its opinion (at p. 242) as follows: " The learned counsel for the defendant seeks to distinguish this case from the authorities cited because the signature of the president to the certificate was not genuine; but we cannot see how the forgery of the name of the president can relieve the defendant from liability for the fraudulent acts of its secretary, treasurer and transfer agent. They were officers to whom it had entrusted the authority to make the final declaration as to the validity of the shares of stock it might issue, and where their acts, in the apparent exercise of this power, are accompanied with all the indicia of genuineness it is essential to the public welfare that the principal should be responsible to all persons who receive the certificates in good faith and for a valuable consideration and in the ordinary course of business, whether the indicia are true or not." The ground of liability was the fact that by attesting the certificate in his capacity as treasurer the defendant's officer thereby attested the signature of the president (notwithstanding it was a forgery), thus giving to it an appearance of genuineness and authenticity which he was empowered by his position to do. It was held that the fact of the forgery did not absolve the defendant from responsibility. The principle is well stated in 22 Ruling Case Law, 134, 135, as follows: " It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, *if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result.* Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. The question always is, Was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? *The test is to be found in the probable injurious consequences which were to be anticipated, not in the number*

*of subsequent events and agencie*` *which might arise.*" (Italics are the writer's.)

The negligent act of the defendant, appellant, in carelessly leaving about authenticated documents customarily used in conjunction with the forms employed by defendant, gave to such forms the appearance of genuineness, and as the result of such carelessness of the defendant, appellant, it was possible to commit the forgery claimed. The defendant should have anticipated as the result of its carelessness the commission of the very forgery which it now claims.

The defendant also contends that there was no privity of contract between defendant, appellant, and plaintiff's assignor and no legal relationship between them. We think there is no force whatever in this contention. The allegation of the plaintiff is that by reason of the negligence of the defendant, appellant, plaintiff's assignor was injured. There is no difference in principle from any other damages sustained by the negligence of another between whom and the injured party there is no contractual relationship or privity. The principle of the recent decision of this court in *Michaelyan, Inc.*, v. *N. J. Fidelity & P. G. Ins. Co.* (229 App. Div. 123) is entirely applicable. In that case there was a questioon as to the negligence of the defendant surety company in the handling of certified copies of a certain power of attorney so that a manager of the defendant was held out as continuing to have a power of attorney which had, in fact, been revoked. Plaintiff was a dealer in rugs and had sold certain rugs to third parties, accepting in payment a promissory note secured by the guaranty executed by said·New Jersey insurance company. It appeared that the guaranty had been executed by the manager of the defendant's surety department, whose authority had been revoked prior to the execution of the guaranty in question. It appeared, however, that the defendant had negligently failed to recall from its employee certain copies of his authority, one of which was annexed to the guaranty, and on the faith of which plaintiff accepted the same. Plaintiff had had no prior dealings with the defendant, and it was evident that the defendant could not possibly have contemplated that injury would accrue to that particular plaintiff as a result of its negligence. Nevertheless, this court held that the defendant had been guilty of a breach of duty toward plaintiff, and that on the facts presented liability resulted.

It, therefore, appears from the facts alleged, which are admitted for the purpose of the motion to dismiss made at Special Term, that plaintiff's assignor suffered damages in excess of the amount of the bond of the defendant, appellant, and that such damages resulted from the negligence of the defendant, appellant, in carelessly leaving about documents which were afterward used

in perpetrating a fraud upon plaintiff's assignor, and by virtue of which plaintiff's assignor was lulled into a sense of security and to accept the bond proffered to it. When this defendant, appellant, left about documents duly authenticated, which when attached to a bond apparently regular on its face gave to such bond a semblance and appearance of authenticity, the defendant placed it within the power of others to make use of such documents to the injury of the plaintiff's assignor to whom said bond was subsequently delivered. We think the defendant was clearly guilty of a breach of duty to whomever such bond was delivered to, and that defendant should respond in damages to plaintiff for its negligence.

The order appealed from should be affirmed, with ten dollars costs and disbursements to the plaintiff, respondent, against the defendant, appellant, with leave to the defendant, appellant, to answer within twenty days from service of order upon payment of said costs.

FINCH, P. J., and McAVOY, J., concur; MARTIN and SHERMAN, JJ., dissent and vote to reverse and grant the motion.

SHERMAN, J. (dissenting). Appellant unavailingly moved to strike out the third cause of action, and, upon the denial of its motion, took this appeal.

Plaintiff's first cause of action is based upon a bond alleged to have been made and delivered by appellant to plaintiff's assignor, guaranteeing the assignor, the lessor of a certain building in Manhattan borough, as obligee against any loss or damage in connection with the completion of alterations and replacements by the lessee, and alleges further facts entitling plaintiff to recover.

The third cause of action is totally different. The pleader in that cause of action does not assert that appellant delivered any bond to the plaintiff's assignor, but that appellant's liability is in negligence, the allegation with respect thereto being as follows:

" *Twenty-fourth.* That if said bond was a forgery, as now claimed by the defendant National Surety Company, the opportunity for such forgery to be committed was due and attributable to the carelessness and negligence of said defendant National Surety Company, in permitting such fully executed forms and documents by which its bonds and undertakings are customarily authenticated to lie about and be exposed in its offices thereby rendering such forms and documents available to strangers and to those having no authority to make use of the same and thereby permitting, also, said strangers and said other persons to possess themselves of said forms and documents and by affixing the same to instruments bearing the title or designation of said defendant National Surety Company, to give to said instruments the semblance and appearance

of being properly executed and duly authenticated instruments of said defendant."

I have concluded that there is no direct causal relationship between the careless exposure of the forms and documents which might authenticate the guaranty of a surety company and the damage herein alleged, inasmuch as the forging of its signature to the bond and its delivery thereafter were necessary intervening elements. Appellant may not be held liable because it failed to foresee that someone might utilize these papers in the commission of that crime. It is not claimed in this cause of action that appellant knew or authorized the execution of this bond, or had any reason to suspect the existence of a forgery in time to avert loss. The proximate cause of plaintiff's damage was the act of the forger, for whose conduct appellant, under the facts pleaded, cannot be held liable. There is not that clear and unbroken sequence which must exist before the acts charged against appellant can be held to be the proximate cause of the loss. If such acts be negligent, as pleaded in the complaint and as must be assumed upon this motion, they may fall within what has been euphemistically termed " negligence in the air." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 341.) The reasoning of the court in *Mairs* v. *Baltimore & Ohio R. R. Co.* (175 N. Y. 409, 414) further supports this view.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

MARTIN, J., concurs.

Order affirmed, with ten dollars costs and disbursements, with leave to the defendant, appellant, to answer within twenty days from service of order upon payment of said costs.