54 So.2d 453

**ALABAMA GREAT SOUTHERN R. CO. v. SMITH.**

**6 Div. 15.**

Supreme Court of Alabama.

Oct. 11, 1951.

Patterson & Patterson, Phenix City, for appellant.

H. A. Ferrell, Phenix City, for appellee.

Benners, Burr, Stokely & McKamy, Birmingham, for appellant.

D. G. Ewing and Hal Howard, Birmingham, for appellee.

**FOSTER, Justice.**

This suit is based on a claim for personal injuries, alleged to result in whole or in part by reason of a defect or insufficiency of a petcock which was a part of a locomotive engine, due to the negligence of defendant or its servants, etc., acting in the line and scope of their employment, in violation of the Federal Boiler Inspection Act.

The facts are that A. H. Smith was a locomotive engineer for the Alabama Great Southern Railroad Company, a common carrier engaged in interstate commerce. On January 28, 1947, he was operating a steam locomotive on a freight run from Meridian, Mississippi, to Birmingham, Alabama. This locomotive had undergone the usual inspection in the railroad yards at Meridian and had been released by the in-

spector as being in suitable operating condition for the trip in question. About thirty miles out of Meridian, Smith noticed that a petcock on the water pump was leaking water. The water pump on a steam locomotive is the mechanism which supplies water to the boiler: it is attached to the side of the boiler some ten or eleven feet from the ground and is located approximately half way between the front end of the engine and the cab. There are four petcocks attached to the water pump. The one which was leaking was on the upper inside part of the pump and angled in towards the boiler. Because of the position and distance from the ground of this petcock, the only way a man could reach it (except in the yards or roundhouse where a ladder is used) was by climbing on a steel running board which is also bolted to the boiler and runs, at different levels, the entire length of the engine. That part of the running board on which Smith had to stand in order to tighten the petcock was located immediately over the water pump, at a height of twelve feet from the ground. In order to reach the petcock below him, Smith had to balance himself in a somewhat precarious position with one foot on the running board and the other foot placed on the air pump, which is also located on the side of the boiler below the running board and immediately in front of the water pump.

From an examination of the picture of the locomotive in question and from the testimony offered at the trial, the jury could find that the method employed by Smith was the only way in which he could have reached the petcock.

The plaintiff testified that he thought it was his duty to tighten the petcock and try to stop the leak. The company had instructed its engineers to do whatever they could to remedy the defect in case of a breakdown on the road. Although there was no immediate danger from the water leak, it was testified that it would reduce the water pressure in the boiler and that a reduction of pressure, if it became sufficiently great, could result in serious damage. There was also testimony to the effect that the water was being thrown,

with each stroke of the pump's pistons, in a small stream or in spurts for a distance of fifteen or twenty feet, and that this stream was directed toward the driving boxes and might in time wash away the lubricating grease from the running gear of the engine and cause damage to it.

The first occasion on which Smith noticed the leak was, as has been said, when the train was only some thirty miles from Meridian. Smith tightened the petcock at this time. Later he again noticed the leak when the train was stopped near the entrance to the yard in Brimingham while waiting for the signal to enter the yard. The petcock had not been touched by anyone since Smith last tightened it. There was testimony to the effect that it would not have come loose during the trip unless the threads were badly worn and defective so that the vibration of the engine might cause the tap, or a nut on the valve, to shake loose thereby permitting water to escape. On this occasion, Smith again attempted to tighten the petcock, assuming the same position described above, with his right foot on the sloping surface of the air pump. This time, however, the air pump (which goes on and off automatically, as the air pressure in the brake line varies) happened to start operating while his foot was placed on it, and the vibration of the air pump was sufficient to cause him to lose his balance and fall to the ground, with the result that he sustained the permanent injury to his right ankle which is the basis of this suit.

There was testimony that Smith could have turned off the air pump before climbing up on the engine and resting his foot on it. It was conceded, however, that this would cause the pressure in the brake line to drop and perhaps necessitate a delay in starting the train while the pressure was being built up. It was also stated that the signal for Smith's train to enter the yard might be given momentarily, and that it would be expected to move immediately.

Defendant also made some point of the fact that the water pump, if it were leaking, could have been turned off and water supplied to the boiler by means of an auxiliary pump known as an injector. It

was testified that this was not usually done except in an emergency or when the engine was standing in the same place for some length of time, and even then it was optional with the engineer which pumping apparatus should be used.

■ The first assignment of error is addressed to the overruling of defendant's demurrer to the complaint. One of the many grounds of demurrer was that the complaint failed to state that plaintiff, at the time he was injured, was performing a service which he had been employed by defendant to do, i. e., attempting to close the petcock. We believe this necessary averment in the complaint was sufficiently made when plaintiff alleged that the accident occurred while the plaintiff was "in the discharge of his duties." Sloss-Sheffield Steel & Iron Co. v. Chamblee, 159 Ala. 185, 48 So. 664.

Defendant cites St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70, 71, where the allegation was that plaintiff's intestate was injured "while employed by said defendant in (interstate) commerce." This allegation alone is obviously insufficient. The language in Adams v. Southern Ry. Co., 166 Ala. 449, 51 So. 987, on this point concerned counts 17 and 18 of the complaint in that cause, which likewise contained only a general averment of employment of the plaintiff by the defendant. Nor do the cases of St. Louis & S. F. R. Co. v. Sutton, 169 Ala. 389, 55 So. 989, or Western Union Telegraph Co. v. Howington, 198 Ala. 311, 73 So. 550, militate against this conclusion. See, Alabama Fuel & Iron Co. v. Ward, 194 Ala. 242, 69 So. 621.

Another ground of demurrer is that the complaint does not allege that the defect was the proximate cause of plaintiff's injuries.

The complaint alleges in substance that the damages claimed are due under and by force of the Federal Employers' Liability Act and the Federal Safety Appliance Act in the course of his employment in interstate commerce. The Federal Employers' Liability Act is set forth in Title 45, section 51, U.S.C.A. The Federal Safe-

ty Appliance Act is set forth in sections 1 and 2, Title 45, O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187, and the Federal Boiler Inspection Act is set forth in Title 45, section 23, U.S.C.A. The legal status of both is the same so far as here material. The latter act makes it unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler tender and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put. There are other provisions for inspection, etc. Section 51, supra, the Federal Employers' Liability Act, fixes a liability on the carrier for an injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier.

■ It has been held by the United States Supreme Court that negligence is not the basis for liability under the Federal Safety Appliance Act or the Boiler Inspection Act. They impose upon the carrier an absolute and continuing duty to maintain the locomotive and all parts and appurtenances thereof in proper condition and safe to operate in active service without unnecessary peril to life or limb. Lilly v. Grand Trunk W. R. Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411; O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187.

■ Any employee engaged in interstate commerce, who is injured in the course of his employment in such commerce by reason of a violation of the Act, may bring an action under the Federal Employers' Liability Act charging violation of the Federal Boiler Inspection Act or the Federal Safety Appliance Act. In so doing, the Federal Employers' Liability Act furnishes the vehicle so the complaint must allege negligence as there specified. Although it is so alleged, proof of a violation of either act complies with plaintiff's duty to prove negligence as alleged. O'Donnell v. Elgin, J. & E. Ry. Co., supra; Moore v. Chesapeake & O. Ry. Co., 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755; Atlantic C. L. R. Co. v. Wetherington, 245 Ala. 313, 16 So.2d

720; Camp v. Atlantic Coast L. R. Co., 251 Ala. 184, 36 So.2d 331.

The complaint does not allege that plaintiff's injuries were proximately caused by such engine defect, but it uses substantially the language of the Federal Employers' Liability Act in alleging that his injuries and damages "were caused from and resulted in whole or in part from said defect in the appliances or works or other equipment of the defendant which defect consisted of the defective condition, etc.," and which defect was due to the negligence of defendant. Coray v. Southern Pacific Ry. Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208; Brown v. Western Ry. of Alabama, 338 U. S. 294, 70 S.Ct. 105, 94 L.Ed. 100.

■ Of course if the defect was not a proximate contributing cause of the injury, the allegation is not sustained. Proximate cause is a proper inquiry on the trial of such cases. O'Donnell v. Elgin, J. & E. Ry. Co., supra; Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, 68 L.Ed. 284. But the complaint need not allege that the injury *proximately* resulted when the language of the statute is used because the statute does not so express it. Reynolds v. Atlantic Coast Line R. R. Co., 251 Ala. 27, 36 So. 2d 102.

The Reynolds case, supra, was brought under the Federal Employers' Liability Act, but not for a violation of section 2 or 23, Title 45 U.S.C.A. The negligence alleged was not for a breach of duty so imposed. That case is authority for the proposition that the complaint is not defective when it uses substantially the language of the Federal Employers' Liability Act, and without alleging that the injury was so *proximately* caused. See, Alabama Power Co. v. Kendrick, 219 Ala. 692 (4 and 5), 123 So. 215.

■ We think the complaint is not subject to demurrer on the ground that it does not allege that the defect proximately contributed in whole or in part to plaintiff's injury.

■ But the question arises upon the trial whether the evidence shows that the injury to plaintiff proximately resulted in whole or in part from a defect in violation of section 23, supra. This is presented by

228

the refusal of the affirmative charge for defendant. The statute, as expressed, is that the defect must contribute in whole or in part to plaintiff's injury. Coray v. Southern Pacific Ry. Co., supra. That means, we assume, proximity between the defect and the injury, otherwise it did not cause even in part the injury. We suppose the meaning of "in part," is that liability exists if the defect was a cause which proximately *contributed* to plaintiff's injury, although with other contributing causes, such as plaintiff's negligence. That is the general principle. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R.; Watt v. Combs, 244 Ala. 31, 12 So.2d 189, 145 A. L.R. 667; Caudle v. Birmingham. Electric Co., 247 Ala. 34, 22 So.2d 417.

The evidence justifies the finding of a defective appliance on the boiler, which needed repairs, that the engineer discovered the defect, and that it was his duty to repair it if he could. Therefore, the jury could find that the effort to make the repairs by the engineer under existing conditions was stimulated by the defect. Snyder v. Philadelphia Co., 54 W.Va. 149, 46 S.E. 366; Southern Railway Co. v. Reeder, 152 Ala. 227, 44 So. 699; Jones & Son v. Lair, 245 Ala. 441, 17 So.2d 577.

There is also a principle that the wrongdoer who is responsible for the proximate consequences of a defect, such as is prohibited by the federal acts, supra, "cannot escape responsibility because of an intervening cause which was in reality only a condition on or through which the wrongdoer's negligent act operated to produce the injurious results." 65 C.J.S., Negligence, § 111, page 695, note 76; 22 R.C.L. 134, 135; Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277; Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1, note 63 A.L.R. 76 (VI); Benenson v. National Surety Co., 235 App.Div. 294, 257 N. Y.S. 13, reversed on other grounds, 260 N. Y. 299, 183 N.E. 505, 85 A.L.R. 79; Dougherty v. Hall, 70 Ohio App. 163, 45 N.E.

2d 608; Fields v. Collins, 266 Ky. 67, 98 S.W.2d 45.

For this principle to be operative here the jury must find that the act of plaintiff, in putting himself in the position which was the immediate cause of his injury, was reasonably stimulated by a defect of the petcock. This was a jury question on the evidence. The jury could find that a breach of duty existed by reason of a defective petcock under the Federal Boiler Inspection Act, and to remedy that defect someone would probably put himself in the position occupied by plaintiff when he was injured, since that was the position one would ordinarily occupy to do so. The jury could find that being in such position on the engine he was injured by reason of the vibration of the air pump while his foot was on it and, therefore, that the vibration of the air pump was only a condition on which the defective petcock operated to produce the injurious results. If the engineer was negligent in so doing, that does not bar a recovery. Coray v. Southern Pacific Ry. Co., supra. Such findings would justify a verdict for plaintiff. This is also supported by the case of Eglsaer v. Scondrett, 7 Cir., 151 F.2d 562, as well as those above cited. There are cases to the contrary, Phillips v. Penn. R. Co., 7 Cir., 283 F. 381; Powell v. Waters, 55 Ga.App. 307, 190 S.E. 615; McCalmont v. Penn. R. Co., 6 Cir., 283 F. 736, but we are not inclined to follow them as they lose sight of the principle which we think is controlling.

The affirmative charge was not due to be given at the request of appellant.

We are not willing to require a reduction in the amount of the verdict. The special charges refused to appellant are subject to the foregoing discussion and were refused without error.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, and GOODWYN, JJ., concur.