12 So.2d 189

**WATT v. COMBS.**
**6 Div. 80.**

Supreme Court of Alabama.

Feb. 18, 1943.

Leader, Hill & Tenenbaum and Kenneth Perrine, all of Birmingham, for appellant.

**LAWSON, Justice.**

The appellee, plaintiff below, brought suit against three defendants, namely, Carol Watt (appellant), Lucius Colmant, Jr., and Virginia Woodson, claiming damages for the loss of the services of his wife, for expenses incurred in the treatment of her injuries, and for property damages to his automobile, as a result of an automobile accident which occurred on the 21st day of August, 1940. Mrs. Combs, the wife of the appellee, also brought suit against the same defendants, claiming damages for personal injuries which she received as a result of the accident. The two cases were consolidated and tried together in the Circuit Court of Jefferson County under the statute authorizing circuit courts in counties of 300,000 or more population to consolidate pending causes of like nature. Section 221, Title 7, Code of 1940. The trial of these cases resulted in separate verdicts in favor of the plaintiffs. Mr. Combs, the appellee in this case, received a verdict in the amount of $2,500. Carol Watt, the appellant, is the only one of the three defendants who has prosecuted an appeal. We are here concerned only with the case in which Mr. Combs was the plaintiff, as separate appeals were taken.

The case of Mr. Combs, appellee, was submitted to the jury on counts A, B, C and D of the amended complaint, all charging simple negligence, and the defendant's plea in short by consent in the usual form. In count A the plaintiff sues to recover damages for the loss of the services of his wife, and for the expense incurred in the treatment of the injuries which she received as a result of the accident. The plaintiff alleges that such injuries to his wife were proximately caused by the negligent operation of automobiles by each of the defendants. Count B is in all respects similar to count A except that the plaintiff sues for property damages to his automobile. Count C is similar to count A in regard to allegations of negligence, but alleges that the negligence of the defendants Carol Watt and Lucius Colmant, Jr., and the negligence of Robert Gunn, while acting within the line and scope of his authority as agent of Virginia Woodson, proximately contributed to the injury of the plaintiff's wife, and the resulting damages to the plaintiff. Count D is the same as Count C except that the plaintiff sues for property damages to his automobile.

Stokely, Scrivner, Dominick & Smith and Mark L. Taliaferro, all of Birmingham, for appellee.

The accident occurred on what is known as the Birmingham-Anniston highway approximately one-half mile beyond the city limits of Birmingham.

On the afternoon of August 21, 1940, a group of young people left the city of Birmingham to go to Baker's Dairy, located on the Birmingham-Anniston highway several miles from the city. They were riding in two cars, a Buick driven by Miss Carol Watt, the appellant, and a Chrysler driven by Miss Virginia Woodson. Miss Watt was seventeen years of age at the time and Miss Woodson sixteen. The cars were owned by the parents of these two young ladies.

They did not get out of the cars when they reached the dairy, but stopped in the driveway. The Buick driven by Miss Watt was in front of the Chrysler, driven by Miss Woodson. Within a few minutes after their arrival, a Dodge car driven by Lucius Colmant, Jr., sixteen years of age, drove up behind the Chrysler. The Dodge car was owned by the father of young Colmant. While the cars were parked at the dairy, Miss Woodson got in the back seat of the Chrysler car and Robert Gunn took her place under the wheel. Within a short time after the Dodge arrived at the dairy; the three cars started back to the city of Birmingham, thus going in a westerly direction on the Birmingham-Anniston highway. The three cars proceeded toward the city, with the Buick leading, followed by the Chrysler, which was in turn followed by the Dodge. They were moving more or less as a unit, approximately twenty yards apart, and were travelling at a speed variously estimated as being from fifty to sixty-five miles per hour. Within a short time after they left the dairy, the Dodge car driven by Lucius Colmant, Jr., passed the Chrysler car, driven by Robert Gunn, and thereafter they travelled toward Birmingham with the Buick in front, followed by the Dodge, which was trailed by the Chrysler.

As the three cars approached the scene of the accident, the appellant, Carol Watt, decreased the speed of the Buick car which she was driving. Lucius Colmant, Jr., the driver of the Dodge car, which was only a short distance behind the Buick, applied his brakes and turned his car to the right, thereby placing both right wheels onto the shoulder of the road. Immediately thereafter the Dodge veered to the left, cutting directly across the road into the path of a Ford car, owned by the plaintiff, travelling east, and driven by Mrs. Combs, wife of the plaintiff. The Ford ran into the right side of the Dodge and then went into the ditch on the south side of the road, the side on which it was travelling. The Chrysler, which was the last of the three cars, ran into the left side of the Dodge. The Buick (front) car, driven by appellant, was not damaged in any way other than on the left side of the rear bumper, where it was struck by the Dodge.

Mrs. Combs, the driver of the Ford car which was travelling in an easterly direction, away from Birmingham, testified as a witness for her husband, but was unable to give an account of the events immediately preceding the accident. She testified:

"I left my home in Ragland on the morning of August 21, 1940, to come to Birmingham. The purpose of that trip was just coming in town to shop. I had some friends with me. I was driving. On the afternoon of August 21st we started back home. At the railroad tracks which mark the city limits of Birmingham on the Birmingham-Anniston Highway we stopped. We met Mrs. Ralph Nicholson of 8 Rockdell Lane there and talked with her a little bit. Her husband is connected with the company that my husband works for. When we left that point I do not know what happened from then on. I do not have of my own knowledge any memory concerning how this accident took place. The last thing I remember I started the car and started down the highway. At that time I don't think I was going rapidly. I don't know how fast I was driving."

That Mrs. Combs was seriously injured as a result of the accident and that the plaintiff incurred considerable expense thereby as well as injury to his automobile is undisputed.

The testimony of the appellant, the driver of the Buick car, as it relates to the manner in which the accident occurred, may be summarized as follows:

That her car and Miss Woodson's car left the dairy at approximately the same time and, although she knew there was another car behind her, she did not know whose it was or who were in it. That after leaving the dairy she drove at a speed of approximately fifty miles an hour until she got to within one-half or one-quarter of a mile from the place where the accident occurred, at which point she reduced the speed of the car to forty miles an hour.

That as she came around a curve onto a straight stretch of road she noticed a car, which is referred to as the "unknown" car, crossing the road from south to north, moving toward the right lane, the one in which her car was travelling. That the "unknown" car "looked like it just came out of somewhere, or else was on the wrong side and was pulling into the correct lane." That when she saw the "unknown" car it was opposite a road which enters the highway from the south. That this car in front of her was going very slow and that she "slowed down" when she was about fifty yards behind it. That she gave no signal to the car behind her that she was slowing down, but that her car was equipped with rear signals. That she did not stop her car before the accident. That she had passed the point where the collision occurred when she heard two distinct "crashes" but that she did not know as a fact that the first "crash" was caused by the collision of the Dodge and the Ford, driven by Mrs. Combs, and that the second "crash" was a result of the Chrysler running into the Dodge. That the Dodge car ran into the left side of the rear bumper of her car, but did very little damage. That no one in her car was injured or thrown from their seats. That she did not know that the Dodge car, driven by Lucius Colmant, Jr., was behind her until just before the accident, when she slowed down and noticed the Dodge "looming up" on her very fast. That she did not know until after the accident that it was Colmant's car. That she did not remember the car driven by Colmant passing Miss Woodson's car.

When questioned, on cross-examination, as to a statement which she made on the day after the accident, which conflicted in several respects with her testimony, Miss Watt stated that the statement contained merely her suppositions and what she had heard, and not what she knew of her own knowledge.

The written statement made by Miss Watt on the day after the accident was introduced in evidence by her and is as follows: "My name is Carol Watt, 1326—19th Street. I am a student, senior, at Ramsey High School. I am 17 years of age. I wish to state that about 5:15 P. M. I was driving west on the Leeds Highway at a speed of about 50 miles per hour, on my way home. I had been with Elizabeth, Gomer and John to see the cows milked east on the Highway. I was travelling West. As I rounded a right curve on a hill I saw some traffic in front of me. I saw several cars pass a slow moving vehicle, all travelling in the same direction. As I approached I decided to pass this car. I was about 30 yards to the rear of this car when I realized I could not pass this car as I saw a fast approaching car, a Ford, going east. It was going very fast. I applied my brakes. I did not signal with my hand that I was slowing down as I did not have time, I had travelled about 30 or 40 feet when I was struck in the rear by the car behind me. I saw through the side mirror that this car, a Dodge, was headed to the left. I then heard a loud crash and knew the Dodge had collided with the Ford going East. I then travelled about 30 yards after I had been struck until I stopped. My tail light signals were working and should have lighted when I applied my brakes. Before the accident I knew that this Dodge was behind me. He had passed my friend's Chrysler before. I saw him pick up speed to pass me so it appeared when I looked up and saw I could not pass the Ford. I do not know if he intended to pass me and the Ford or follow me around the Ford and then pass me. No one in our car was injured. My car was struck at the left bumper. It is not damaged.

(Signed) "Carol Watt."

Two officers of the Highway Patrol questioned Miss Watt on the day after the accident and were present when the above statement was signed. It appears from their testimony that in addition to the above written statement, Miss Watt said: That she knew that the Dodge and Chrysler cars were behind her and that the Dodge passed the Chrysler some distance back from the point where the accident occurred. That she was watching the cars in the rear-view mirror and that when she cut in behind the slow moving vehicle she looked in the mirror and saw the Dodge as it cut across the road.

The testimony of both Highway Patrolmen was to the effect that Miss Watt stated to them that at the time of the accident she was travelling at a speed of forty miles an hour and that the report which they made of the accident so shows. Officer Bryant, however, testified that she stated that she had been going as fast as fifty-five or sixty miles an hour prior to the time that the accident occurred.

The testimony of Lucius Colmant, Jr., the driver of the Dodge car, which was behind the car driven by the appellant, is in substance as follows:

That the Buick, driven by Miss Watt; the Chrysler, Miss Woodson's car; and the Dodge driven by himself, left the dairy in that order at approximately the same time. That he passed the Woodson car at a point a mile or a mile and a half east of the scene of the accident, at which time he was running at a speed of approximately fifty miles an hour. That after he passed the Woodson car, he cut back into the right lane of the highway behind the car driven by appellant. That the car he was driving was about twenty yards behind that driven by the appellant. That just immediately before the collision occurred the Buick car slowed down suddenly and in his opinion stopped. That the driver of the Buick did not signal with her hand that she was slowing down and that although he was looking at the car in front of him, he did not see any signal from the lights on the rear of her car or any other signal. That when he saw the car in front of him slowing down he applied the brakes to his car and turned onto the shoulder of the highway. That he evidently lost control of the car when the wheels got off the pavement, causing it to cut back to the left, across the highway, and into the path of the Ford travelling east and driven by the wife of the plaintiff. That in his opinion all three of the cars were going about fifty miles an hour when the front car began to slow down. That after his car cut across the road it was hit on the right side by the Combs's Ford and on the left side by the Woodson's Chrysler.

The defendant Colmant further testified that he could see beyond the Buick car at the time it began to slow down and did not see any car in front of the Buick travelling west, nor did he see anything in the road to obstruct the progress of the Buick car. He testified, however, that he saw the Ford coming toward him and realized that he could not pass the Buick without running into the Ford.

Virginia Woodson, the other defendant, testified that at the time of the accident she was riding on the back seat of the Chrysler, which was being driven by Bob Gunn. That she did not see the accident and did not know how much distance separated her car from the Dodge car. That the car in which she was riding crashed into the side of the Dodge within a second or two after the Dodge and Ford collided. That her car never did come into contact with the Combs car. She further testified that the car in which she was riding belonged to her mother and that she told the officers at the scene of the accident that she was driving the car because she had been told by her mother not to let anyone else drive it. She also testified that she did not give any direction, admonition or instruction to Bob Gunn about the driving of the car.

The evidence shows that there were skid marks on the pavement, from 150 to 175 feet in length, leading up to the wheels of the Dodge and the Chrysler, but no skid marks were found leading to the Buick or the Ford cars.

Assignments of error 2, 3, 4 and 5 all relate to the action of the trial court in overruling appellant's demurrers to counts A, B, C and D of the complaint as amended. The demurrers were correctly overruled.

Counsel for appellant do not discuss in brief the court's action in overruling the demurrer as to counts A and B, but do contend that counts C and D do not state a cause of action against the defendant Virginia Woodson, for the reason that they charge the accident was proximately caused by the negligent act of Robert Gunn, acting for Virginia Woodson, a minor, who because of her minority could not appoint an agent, and therefore is not liable for his acts. It is contended that counts C and D, being demurrable as to one defendant, are demurrable as to all. As before stated, Virginia Woodson did not take an appeal. The point was taken in the demurrer filed by the defendant Woodson, and the appellant adopted the demurrer so filed on behalf of Miss Woodson as her own and assigned it to all the counts of the complaint.

■■ It is not here necessary to pass on the court's action in overruling the demurrer of Miss Woodson taking that point. Suffice it to say that the court did not err in overruling demurrer of the appellant. Where a cause of action is against two or more defendants, one defendant cannot demur on the ground that no cause of action is stated against the other defendant. First Trust & Savings Bank of Rock Hill et al. v. Bruitt et al., 121 S.C. 484, 113 S.E. 469; 49 Corpus Juris 366. It has been decided

by this court that an appellant cannot insist upon error, in the overruling of a demurrer interposed by his codefendant, who is not complaining of the ruling. Larkin v. Haralson, 189 Ala. 147, 66 So. 459; Shiff & Sons v. Andress, 147 Ala. 690, 40 So. 824.

The action of the trial court in overruling appellant's motion for a new trial is the basis of the first assignment of error. It is earnestly insisted that the verdict as to the appellant was so opposed to the great weight of the evidence as to be clearly and palpably wrong and unjust, in that the great preponderance of the evidence tends to show that the negligence of Lucius Colmant, Jr., was the sole proximate cause of the accident.

Counsel for appellant insists that the rule enunciated in the case of Garrett v. L. & N. R. R. Co., 196 Ala. 52, 71 So. 685, 686, is applicable to the facts of this case as they apply to the appellant. The rule there stated is as follows: "The law, in its practical administration in cases of this kind, regards only proximate or immediate, and not remote, causes, and, in ascertaining which is proximate and which remote, refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

We do not think the above quoted rule here controlling for the reason that it is equally well settled in this jurisdiction that if one is guilty of negligence and this negligence concurred or coalesced with the negligence of another, and the two combine to produce a given result, each is liable for the damages, and the negligence of each will be deemed the proximate cause of the injury producing the damages. Aplin v. Dean, 231 Ala. 320, 164 So. 737; Alabama Power Company v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1.

The general rule is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons contributed to cause the injury to the plaintiff if the negligence of the defendant was an efficient cause, without which the injury would not have occurred. Stated differently, where a defendant is guilty of negligence which causes an injury, and the plaintiff is free from negligence contributing thereto, the fact that the negligence of a third person also contributed does not relieve the defendant from liability for his negligence. Aplin v. Dean, supra.

Under the evidence in this case the jury could have found that the rate of speed at which the appellant was driving her car, together with the fact that she gave no warning of her intention to reduce its speed, knowing that she was being closely followed by another car, was under all the circumstances a proximate cause of the injury producing the damages. It was open to the jury to find that the appellant was negligent and that such negligence, together with that of the drivers of the other cars, combined and coalesced at the moment of time when the injury occurred, and this conjoint negligence, continuously operative, proximately caused the injuries made the basis of this case.

Appellant insists that the trial court's action in refusing to permit the appellant to introduce in evidence a written report made by two Highway Patrolmen who investigated the accident constitutes reversible error. Assignments of error 6, 7, 8 and 9 all relate to this point. The report which appellant sought to introduce was referred to by Officer Bryant, one of the Highway Patrolmen, as follows:

"My partner and I made up a report of this accident. We investigated and questioned a witness and then we put down on our report that (sic) we were told by the various witnesses. I put down on my notebook what Miss Watt told me at that time and later copied it off on the report."

It does not appear that the report was made in compliance with any statutory requirements and, therefore, the court's action in excluding it was without error. Griffin v. State, 155 Ala. 88, 46 So. 481; Burrow v. State, 23 Ala.App. 99, 121 So. 449; Sanders v. State, Ala.Sup., 11 So.2d 740.[1] Appellant contends that the witness Bryant testified that Miss Watt stated to him that she was going fifty-five to sixty miles an hour, but that the written report made by the witness contained the statement that Miss Watt said she was going forty to forty-five miles an hour and that, therefore, the report was admissible for

---

the purpose of showing a contradictory statement of the witness. The witness, however, admitted that the report showed that Miss Watt stated she was going only forty to forty-five miles an hour at the time of the accident. It was shown that the statement made by Miss Watt that she was travelling at a speed of 55 to 60 miles an hour referred to the speed of her car before it reached the scene of the accident and that this fact was not contained in the report of the accident as made by the witness.

█ Charges 17, 18, 19 and 24, requested in writing by the appellant, were refused by the court without error. They were misleading in that they were susceptible of the construction that there was no duty placed on the appellant by the statutory law of this state to give any signal before reducing the speed of her automobile, even though such reduction of speed was made for the purpose of ultimately bringing the forward momentum of her car to a complete stop. Under the evidence in this case it was a question for the jury to determine whether or not at the time the appellant "reduced the speed of her car" she intended to stop. The defendant Colmant testified that to the best of his recollection the car driven by the appellant did stop. And the appellant, on the day after the accident, made a statement to the effect that she stopped her car at a point thirty yards distant from the place where she was hit by the car behind her. These charges are also misleading in that they are capable of the construction that the law of this state does not require a driver of an automobile to give a signal of his intention to slow down or reduce the speed of his car under any circumstances, irrespective of the speed at which his car was moving or the proximity of other vehicles.

█ Refused charges 3, 6, 11 and 21 were substantially covered by the court's oral charge and written charges given at the request of the appellant and their refusal, therefore, does not constitute reversible error.

The trial court did not commit reversible error in refusing written charge No. 15 requested by the appellant, as it was substantially covered by written charge No. 10 given at appellant's request.

█ Written charge No. 23, requested by the appellant, was correctly refused. It pretermits any consideration of the action of the appellant at the time of the accident, and is abstract in view of the evidence in this case.

The jury returned to the courtroom within a short time after it had retired to consider the case, and the foreman propounded to the court the following inquiry: "The question is, if and when the jury should decide a certain amount of damages should be awarded, is it the jury's job to apportion those damages between the three defendants?" The court replied: "No sir. If you were to award damages in this case it would be in this form. 'We, the jury, find for the plaintiff and against the defendant,' this one, that one or the other, any combination, whatever way your judgment should indicate from the testimony and from the law, 'We, the jury, find for the plaintiff and against the defendants', or whatever it may be, 'and assess the amount of damages at ———,' writing it out in words and figures. That is all there is to it." The appellant excepted to the court's reply to the foreman of the jury and thereupon requested a written instruction to the effect that each of the defendants against whom the jury returned a verdict would be liable for the entire amount of the verdict. The court refused to mark the charge given or refused.

██ The trial court's answer to the question asked by the foreman of the jury correctly stated the law. In an action against joint tort feasors, the assessment of damages must be for a lump sum against those found guilty and cannot be severally apportioned between them. City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276; City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25; 17 Corpus Juris 1084, 25 C.J.S., Damages, § 189.

█ The action of the court in refusing to endorse "given" or "refused" on appellant's requested written charge A does not constitute reversible error. It was within the court's discretion to refuse to consider a requested written instruction after the jury had retired. Sovereign Camp, W. O. W., v. Hutchinson, 217 Ala. 71, 114 So. 684.

██ Appellant contends that written charges given at the request of her co-defendant, Lucius Colmant, Jr., were prejudicial to her and that the giving of said charges constitutes reversible error. We are of the opinion that under the broad language of Section 273, Title 7, Code of 1940, one of several defendants may assign as error the giving of written charges re-

quested by a codefendant, although no case on this point has been called to our attention. We do not believe, however, that the written charges given at the request of Colmant worked substantial injury to the appellant, even if it be admitted that they were so favorable to Colmant that the court's refusal to give them would not have required a reversal by this court on an appeal by him. The charges do not instruct the jury that if they are reasonably satisfied from the evidence as to the facts hypothesized that they must find against the the appellant or that such facts constitute negligence on her part. They are to the effect that if such facts therein hypothesized were the sole proximate cause of the accident, then the jury could not return a verdict against the defendant Colmant. The court did not commit reversible error in giving said written charges at the request of the defendant Colmant.

Finding no reversible error in the record, the judgment of the trial court must be affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.

Supreme Court of Alabama.

Feb. 18, 1943.

Leader, Hill & Tenenbaum and Kenneth Perrine, all of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith and Mark L. Taliaferro, all of Birmingham, for appellee.