PER CURIAM.
Edna Richter brought this action against Raymond Uhrig, a lawyer, seeking damages for Uhrig’s alleged malpractice in negligently representing Richter at a loan closing. The trial court directed a verdict in favor of Uhrig[1] at the close of the plaintiffs evidence.
In 1978, Edna Richter and Rube Brett became engaged to be married. Richter and Brett decided to build a new house to be a home for their combined families. When Brett went to Central Bank to procure financing, he was told that he lacked sufficient income to qualify for the loan. The loan officer and vice-president of Central Bank, Charles Mills, called Mrs. Richter to inquire whether she would co-sign on the note. She objected because she did not want to place any of her property in jeopardy. She was also concerned that her interests might not be adequately represented because she could not see very well and could not read the fine print. Mills suggested that she could have an attorney present at the closing. Mrs. Richter then apparently agreed to co-sign on the note.
At the loan closing on March 8, 1979, Richter, Brett, and Uhrig met in Mills’s office at Central Bank. Mrs. Richter once again expressed her fear that some of her property might be endangered by the transaction into which she and Brett were entering. Before signing the note and mortgage, Mrs. Richter asked Uhrig to review the documents to ascertain that her interests were protected. Uhrig replied that everything was in order. Richter then co-signed the note in the amount of $42,-600.00, secured by a mortgage on the lot and the prospective structure. .
Brett purchased a lot located on Orba Drive in Huntsville, Alabama, for $16,-750.00. The remainder of the loan proceeds was placed in a joint checking account. Construction began on the new house in March, and by June all of the original monies had been expended. On June 28,1979, the house under construction on Orba Drive burned. The site insurer paid $27,196.43, which was placed in the joint checking account, and construction began again. Construction delays necessitated the execution of a renewal note, also secured by a mortgage on the Orba Drive property, on September 14, 1979, in the amount of $55,000.00. The proceeds from this note were applied to pay off the origi *261 nal note of $42,600.00, and to advance $12,-400.00 in additional loan proceeds. The original note and its renewal were substantially paid off on December 11, 1979, by insurance proceeds in the amount of $53,-996.76 from another construction site fire that occurred on October 31, 1979.
On December 11, 1979, another note was signed at Central Bank in the amount of $16,611.68. Of this amount, $14,000.00 represented new money, and $2,611.68 was applied to pay the amount still owed on the September 14, 1979, note. On January 10, 1980, a new loan was procured in the amount of $38,400.00. On March 25, 1980, a combination renewal note joined the December 11, 1979, and January 10, 1980, transactions into a single obligation and a note for $3,500.00 in additional proceeds was executed as a cross pledge on the existing Orba Drive mortgages. This combined note was renewed three more times, on July 31, 1980, December 11, 1980, and March 11, 1981. The total obligation incurred as a result of these transactions now equaled $70,794.77. The house was still not completed.
By the fall of 1980, suits claiming in excess of $20,000.00 had been filed against Brett and Richter by material creditors. At this time, Mrs. Richter allegedly first became aware that she was personally liable on all notes executed in favor of Central Bank. In an effort to recoup her losses by finishing the house and selling it, Mrs. Richter executed a note dated November 14, 1980, with Central Bank for $35,-000.00, which was secured by a mortgage on her personal residence. That note was renewed on March 3, 1981.
Despite her efforts to finish the house, the situation worsened, with most of the additional funds borrowed being applied to satisfy delinquent material payments. Attempts to obtain additional financing after March 1981, failed and the house was never completed. Mrs. Richter’s relationship with Rube Brett ended, and he conveyed all his interest in the Orba Drive property to Mrs. Richter by quitclaim deed on May 29, 1981.
Mrs. Richter retained an attorney and sued Central Bank for fraud on August 13, 1981. The bank counterclaimed for the amount of both outstanding notes. Summary judgment was entered against Mrs. Richter, and Central Bank obtained a judgment against her for approximately $84,-000.00. Part of the outstanding note balances had been paid from the foreclosure sale of the Orba Drive property.
The remainder of the judgment was paid from a garnishment on Mrs. Richter’s bank account, the sale of a piece of rental property, and the eventual foreclosure sale of her personal residence. Mrs. Richter regained her residence, through redemption, in a settlement with Central Bank whereby a $30,000.00 note was executed with First American Federal Savings and Loan Association.
Mrs. Richter filed this action on March 7, 1985, alleging professional negligence and breach of agreement against Raymond Uh-rig. Mrs. Richter claims that all the damage she suffered as a result of the series of transactions was the proximate result of Uhrig’s negligence in reviewing the initial March 9, 1979, construction loan documents.
Our function is to view the evidence most favorably to the non-moving party, and if, by any interpretation, it can support any inference supporting a conclusion in favor of the non-moving party, we must reverse. Herston v. Whitesell, 374 So.2d 267, 271 (Ala.1979). To survive a motion for directed verdict, the non-movant must present a genuine issue of material fact for the jury’s determination. Ralls v. First Federal Savings & Loan Association of Andalusia, 422 So.2d 764 (Ala.1982); Bardin v. Jones, 371 So.2d 23 (Ala.1979); Rule 50(e), A.R.C.P.
To succeed on a claim of legal malpractice, Richter would have to prove that Uh-rig breached his duty of due care in the performance of legal services for Richter and that such breach was the proximate cause of injury to Richter. Tyree v. Hendrix, 480 So.2d 1176 (Ala.1985); Mylar v. Wilkinson, 435 So.2d 1237 (Ala.1983). *262 Herston v. Whitesell, 348 So.2d 1054 (Ala.1977).
Viewing the record in the light most favorable to plaintiff, there appears to be a question of fact concerning the elements of duty and breach. The original note did not, in fact, include the limitations on personal liability allegedly insisted upon by Mrs. Richter. However, a legal question arises regarding the issue of proximate cause. Would the defendant’s negligence have resulted in damage to the plaintiff absent the intervention of outside causes? If Richter cannot show that, then any negligence of attorney Uhrig could not have proximately caused the damages suffered in her ill-fated attempts to complete construction of the Orba Drive property.
The record reveals that Uhrig was present only at the March 8, 1979, loan closing. His representation of Mrs. Richter was limited to that first loan transaction. In November of 1980, Mrs. Richter was informed by Central Bank that she would have to mortgage her residence on Melbourne Avenue in Huntsville, Alabama, in order to obtain additional financing. By this time, the original transaction had long since been extinguished, and numerous additional notes had been executed, causing Mrs. Richter to incur extensive liability. During the time these additional debts were being incurred, Mrs. Richter testified that she was assured by both Rube Brett and Charles Mills that the notes she was signing were merely renewals and that they contained no additional loan amounts.
While it may have been a breach of duty for Uhrig to advise Mrs. Richter to sign the original note, given her expressed reservations, he cannot reasonably be held to answer in damages for her mistaken impressions concerning future loan transactions. These alleged impressions on the part of Mrs. Richter were clearly the result of alleged representations made by Brett and Mills concerning the nature of the subsequent transactions. These actions by third parties, coupled with the difficulties experienced during the construction of the house, were intervening causes sufficient to break the chain of causation from any breach of duty committed by Uhrig.
An intervening cause is one that occurs after an act committed by a tort-feasor and which relieves him of his liability by breaking the chain of causation between his act and the resulting injury. General Motors Corp. v. Edwards, 482 So.2d 1176, 1194 (Ala.1985); Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976). If an intervening cause could have reasonably been foreseen at the time the tort-feasor acted, it would not break the chain of causation between his act and the injury. Edwards, supra; Vines, supra. Conversely, if the intervening cause was unforeseeable, the causal chain is broken. Vines, supra. Similarly, if the intervening cause is not sufficient to stand as the “efficient cause” of the injury, the causal chain is not broken, but, if the intervening cause was alone sufficient to produce the injury complained of, it is deemed the proximate cause of the injury and the tort-feasor between whose act and the injury the cause intervened is relieved of liability. Edwards, supra; Watt v. Combs, 244 Ala. 31, 12 So.2d 189 (1943).
The forces that combined to cause the damages claimed by Mrs. Richter were outside the realm of the foreseeable consequences of breach of duty committed by attorney Uhrig. Because we find that Mrs. Richter has not presented a prima facie case of negligence against attorney Uhrig, it was not error for the trial court to direct a verdict in favor of the defendant. This judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, ADAMS and STEAGALL, JJ., concur.

. The complaint also named Uhrig as partner and their partnership as defendants, but we shall refer solely to Uhrig as defendant.