Rel: November 8, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0106
_____

**Londell Marina, Jr.**

**v.**

**Bama Reinforcing, LLC**

**Appeal from Madison Circuit Court**
**(CV-22-901025)**

PER CURIAM.

Londell Marina, Jr., appeals from a judgment as a matter of law entered by the Madison Circuit Court in favor of Bama Reinforcing, LLC, in this negligence action commenced by Marina against Bama

Reinforcing, which arises from a workplace accident in which Marina was injured. We reverse and remand.

## I. Facts

At the time of trial, Marina had been a concrete finisher for 22 years and he lived in Marietta, Georgia. A concrete finisher levels out, smooths, finishes, and cures concrete that has been poured at locations on a construction site. To do that job, Marina uses tools such as bull floats, trowel machines, screed board, chipping hammers, and cure paper.

To strengthen concrete and to keep it from cracking under weight and pressure, reinforced steel rods or wire mesh is placed inside the form where concrete is to be poured. Such reinforced steel is called rebar, and the placement of rebar is performed by rodbusters. When concrete is poured for a foundation, rodbusters often use concrete blocks to support the placement of rebar in the form. For elevated areas where concrete is poured, rodbusters use metal bar "chairs" to hold the rebar or wire mesh in place.

At the time of the accident, Marina was a concrete finisher for Fessler & Bowman, a general contractor that had been hired to perform all the concrete work involved in the construction of a new Federal

Bureau of Investigation ("FBI") building at Red Stone Arsenal in Huntsville, Alabama. Fessler & Bowman, in turn, had hired Bama Reinforcing as a subcontractor to perform the rebar installation for the project. Rodney Pate is the vice president of operations for Bama Reinforcing, and his younger brother, Daniel Pate, was Bama Reinforcing's foreman at the FBI building job site.

Bama Reinforcing's contract with Fessler & Bowman contained a specific provision that required Bama Reinforcing to clean up its work area after it had performed its duties.

> "8. **Cleanup and Removal**. [Bama Reinforcing] shall maintain the area in which it performs the Work in a clean, neat and safe condition and shall comply promptly with instructions from [Fessler & Bowman] with respect thereto, upon completion of each stage, or when requested by [Fessler & Bowman]. [Bama Reinforcing] shall remove from the areas in which it performs the Work, to the satisfaction of [Fessler & Bowman], all of [Bama Reinforcing's] rubbish, debris, materials, tools and equipment; and if [Bama Reinforcing] fails to do so promptly, [Fessler & Bowman] may, after twenty-four (24) hours' notice to [Bama Reinforcing], remove the same to any place of storage or dumping ground at [Bama Reinforcing's] risk and expense and without responsibility for loss, damage or theft. All storage or removal costs incurred by [Fessler & Bowman] shall be deductible from any payment or balance due [Bama Reinforcing] hereunder."

(Bold typeface in original; other emphasis added.)

3

On November 9, 2021, Marina was working on a concrete slab that had been poured on ground level in a form. Initially, Marina was operating the water truck used to moisten the concrete slab. Marina's supervisor relieved him of that duty and told him to roll out the cure paper that would be placed on top of the concrete. Marina proceeded to walk from the water truck over to the location where the cure-paper rolls were located.[1] However, when he got there, Marina realized that he needed a knife to pull out the cure paper. Marina asked if anyone had a knife, and one of his coworkers, who was over by the water truck, responded that he had a safety knife. Marina walked back over to the truck and retrieved the knife from his coworker. Marina testified:

> "A. Once I got the knife, I turned around and went back, and I was probably not -- maybe a quarter of the way back to the UltraCure [the cure paper], and that's when I felt something in my foot. Immediately, I screamed and jumped up, and that's what happened."

Marina sat down and discovered that he had stepped on a piece of metal "chair." The metal piece of chair had penetrated Marina's work boot and

---

[1]Marina testified that the cure-paper rolls were "maybe six or seven [feet] long and maybe two [feet] wide. It's almost like a long piece of carpet."

punctured Marina's right foot. Marina testified that the reason he had not seen the piece of chair when he was walking was that "[i]t was almost like it was camouflaged. … [T]he dirt kind of camouflaged this small piece."

Because Marina was experiencing intense pain from the accident, he was taken to Huntsville Hospital where the piece of chair was removed from his foot, the wound was treated, and Marina was given medication. Marina was placed on light duty and had to use a wheel crutch to ambulate until around June 2022. Marina testified that he still experiences pain from the injury, that he is not able to perform the kicking and stomping his job requires as well as he could before the accident, and that he tires more easily on jobs because of the pain.

On September 14, 2022, Marina commenced this action against Bama Reinforcing, asserting claims of negligence and wantonness. On September 23, 2022, Bama Reinforcing answered Marina's complaint, and it asserted, among other defenses, contributory negligence.

On November 7, 2023, Bama Reinforcing filed a summary-judgment motion and a brief in support thereof in which it argued that Marina had not presented sufficient evidence to establish that Bama

Reinforcing "was responsible for cutting a chair or leaving the subject piece of chair on the ground." In the alternative, Bama Reinforcing contended that Marina "was guilty of contributory negligence as a matter of law for failing to watch where he was walking."

On January 2, 2024, Marina filed a response in opposition to Bama Reinforcing's summary-judgment motion. In his response, Marina asserted that rodbusters for Bama Reinforcing were the only workers on the job site who used chairs. He also noted that Bama Reinforcing had a contractual obligation to clean up its work area after the completion of its work.

On January 26, 2024, the trial court denied Bama Reinforcing's summary-judgment motion. The order did not provide a specific reason for the denial, but it stated that the decision had been reached after "[h]aving considered the arguments and representations of counsel, and after careful review of all relevant and applicable law."

On February 6, 2024, the case proceeded to trial.[2] During Marina's case-in-chief, the jury heard testimony from Marina, Rodney Pate, Daniel Pate, and the doctor who had treated Marina at Huntsville Hospital.

---

[2]Before trial, Marina abandoned his wantonness claim.

Marina rested his case late on the first day of trial, and Bama Reinforcing filed a written motion for a judgment as a matter of law. The trial court heard extensive arguments from counsel for both parties concerning that motion on that day and on the following morning. On February 7, 2024, the trial court orally granted Bama Reinforcing's motion for a judgment as a matter of law; the trial court also signed and stamped "Motion Granted" on Bama Reinforcing's written motion.

On February 16, 2024, Marina appealed.

## II. Standard of Review

"When reviewing a ruling on a motion for a [judgment as a matter of law ('JML')], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So. 2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So. 2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So. 2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no

7

presumption of correctness as to the trial court's ruling. <u>Ricwil, Inc. v. S.L. Pappas & Co.</u>, 599 So. 2d 1126 (Ala. 1992)."

<u>Waddell & Reed, Inc. v. United Invs. Life Ins. Co.</u>, 875 So. 2d 1143, 1152 (Ala. 2003).

### III. Analysis

Marina disputes both of the potential bases Bama Reinforcing articulated in its motion for a judgment as a matter of law. Specifically, Bama Reinforcing contended, as it does on appeal, that attributing to Bama Reinforcing's conduct the fact that the piece of chair was on the ground would be "pure speculation, at best." Bama Reinforcing's brief, p. 15. Second, Bama Reinforcing argued that Marina was contributorily negligent as a matter of law because, it asserted, he "was well aware of and appreciated the fact that there was construction debris on the ground at the site which could cause him injury if he stepped on it." <u>Id.</u>, p. 20. Bama Reinforcing insists that "[t]his accident occurred[] because Marina was not watching where he was walking, contrary to repeated instructions that he had received from his employer." <u>Id.</u> We will deal with the two issues in reverse order.

### A. Contributory Negligence

We deal with contributory negligence first because it is easily dispatched. To begin with, although the trial court stamped "Motion Granted" on Bama Reinforcing's written motion for a judgment as a matter of law, and although that motion included an argument that Marina was contributorily negligent as a matter of law, the trial court's oral explanation for granting the motion indicates that it did not rule in Bama Reinforcing's favor on that basis. During the arguments on the motion, Marina's counsel stated:

> "And the other thing, on [contributory negligence], we talked about it in the response to summary judgment.

> "To directed verdict, which is what he's made, for judgment as a matter of law, it's the same standard as summary judgment, you know, the same thing. Well, the case law for [contributory negligence] on summary judgment and -- and a directed verdict for judgment as a matter of law is that the movant has to show two things: That the plaintiff had put himself in a dangerous way. And two, that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. That's not for it to go to the jury and for the jury to be charged, but for you to take it away from the jury, you have to say Londell --

> "THE COURT: Well, I'm not going to take [contributory negligence], that would be -- that will hang out there. I'm really more stuck on the other.

9

"[Marina's counsel:] Okay. Well, then I'll quit talking about [contributory negligence].

"THE COURT: Yeah.

"[Marina's counsel:] Okay.

"THE COURT: You can swim in another river for that one."

Moreover, just before ruling in Bama Reinforcing's favor, the trial court discussed whether the presence of the piece of chair as debris could be attributed to Bama Reinforcing; it did not discuss contributory negligence.

"THE COURT: Discuss the fact that the incident occurred at 4 p.m. on the day that it occurred and people had been there all day, and the defendant had not even been there that day, nor by -- by using testimony more most favorable to your client, the day before, and that everybody is under a duty to clean the site.

"[Marina's counsel]: I mean, I don't think it's disputed -- I agree with you. I think it's undisputed that on a job site any contractor -- they're all under a duty to try to keep the site clean.

"THE COURT: Keep the site clean.

"[Marina's counsel]: But you also --

"THE COURT: It's a control issue. Do you see what I'm saying?

"[Marina's counsel]: Yes, sir.

"THE COURT: <u>It's a control issue because you have at least a full working day and the better part of another working day where the defendant was not even present</u>. And there is rubbish, I -- I think you-all are categorizing it appropriately, that has been left on the site. <u>I don't see where the control goes to that particular defendant simply because they, at one point in time, may have handled the larger piece [of chair]</u>.

"<u>Because they testified they never cut them and nobody every changed that -- now -- on that. But it's the control issue, the control issue of a site that by everyone's testimony so far is everybody is under a general -- not only the contractors, but the subs, to clean, everybody is to clean</u>. And I believe the testimony was that even the -- the owner -- or property owner for lack of a better term had -- had said to everyone. Make sure you clean. I mean, had -- I don't want to say had gotten on them about it, maybe had reminded them for whatever the occasion may be.

"I'm going to grant the motion for directed verdict."

(Emphasis added.)

In addition to the fact that the trial court did not orally rule in Bama Reinforcing's favor on the basis of contributory negligence, this Court has repeatedly stated that "questions of negligence incorporate factual evaluations that are almost always within the province of the jury. … It follows that a summary judgment based on the doctrine of

11

contributory negligence is seldom proper." <u>Gulledge v. Brown & Root,</u>

<u>Inc.</u>, 598 So. 2d 1325, 1330 (Ala. 1992).

> "To establish contributory negligence as a matter of law, a defendant seeking a summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. See <u>H.R.H. Metals, Inc. v. Miller</u>, 833 So. 2d 18 (Ala. 2002); see also <u>Hicks v. Commercial Union Ins. Co.</u>, 652 So. 2d 211, 219 (Ala. 1994). The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. <u>We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger</u>. See <u>H.R.H. Metals</u>, supra."

<u>Hannah v. Gregg, Bland & Berry, Inc.</u>, 840 So. 2d 839, 860-61 (Ala. 2002)

(emphasis added).

It is true that Marina testified that he generally knew that he had

to be alert and watch where he was stepping at a construction site.

> "Q. [Bama Reinforcing's counsel:] Okay. All right. The reason y'all are discussing where you're walking is this is a construction site, correct?
>
> "A. Yes.

12

"Q. And there's a lot of hazards on the ground in a construction site that just occur naturally during the course of construction, correct?

"A. Correct.

"....

"Q. It is common to have materials left on the ground in a construction site, correct?

"A. Yes.

"Q. And that's not just true for this particular job site, that's true for virtually every job site that you've been on, correct?

"A. Correct.

"Q. And you knew and appreciated, based on your experience both as a supervisor and as a worker, that there were things that if you weren't watching where you're walking and stepped on them, that might hurt you?

"A. That's correct."

However, Marina also testified that there are several things a worker must be aware of while traversing a construction site.

"Q. [Marina's counsel:] Okay. And in the construction industry when you're out there on the job site, can you walk around looking at your feet?

"A. No.

"Q. Why not?

13

"A. You've got to -- You have to have your head on a swivel.

"Q. And what -- Why is that?

"A. Because you have so many things going on, you have -- you have cranes, you have overhead -- people working over your head, you have machinery moving everywhere, so you have to be aware at all times.

"Q. And I think didn't you -- did you see that [the chair piece]?

"A. No.

"Q. And tell us again why you couldn't see that?

"A. It was in the dirt. It was camouflaged.

"Q. You can't really avoid something you can't see?

"A. Correct. Truthfully, if I saw that I wouldn't have stepped on it."

Thus, although Marina generally knew he had to be aware of his surroundings at the job site, there was not undisputed evidence demonstrating that Marina consciously appreciated the danger at issue here. In fact, as we will see in Part B of this analysis, Marina testified that, before this accident, he had never seen a piece of a chair -- as opposed to a full chair -- loose on the ground at a job site. Indeed, one of the pictures entered into evidence showed a full chair on the ground along

with three fenceposts. Marina plainly had no difficulty spotting and avoiding those obstacles in walking back and forth between the water truck and the rolls of cure paper. The small piece of chair was another matter. In short, whether Marina was contributorily negligent was clearly an issue for the jury to determine, and it therefore was not a proper basis for entering a judgment as a matter of law.

B. Fault for the Presence of the Piece of Chair

The actual basis upon which the trial court ruled in Bama Reinforcing's favor involved a mixture of duty and causation. In its colloquy with counsel concerning Bama Reinforcing's motion for a judgment as a matter of law, the trial court emphasized three facts testified to at trial: (1) Bama Reinforcing did not cut chairs; (2) Bama Reinforcing had completed its work on the concrete slab Marina was working on at least the day before the accident; and (3) all of the contractors, including Fessler & Bowman, had a duty to clean up the job site. In combination, the trial court believed that those facts meant that Marina had not demonstrated that Bama Reinforcing was the party responsible for leaving the piece of chair on the ground where Marina stepped on it.

15

Regarding the first fact, Rodney Pate testified that Bama Reinforcing never cut chairs when doing its rodbusting work and that Fessler & Bowman supplied the chairs.

"Q. [Bama Reinforcing's counsel:] Would Bama cut a chair for any reason?

"A. So this is going to sound bad for us, but, no. We wouldn't cut any chair for many reasons. And this is what is going to sound bad for us is because it takes more time. And when I say this, a rodbusting company is paid by ton. The quicker we put the tons in, the more money we make. We ain't equipped to cut those; one, it's not our material to cut. The -- the customer who brought the material would have to get it approved or they would have to order a certain size of chair. But what our guys carry on their sides -- what rodbusters carry on their sides is a reel with tie wire on it and two pair of pliers; a pair of tying pliers and cutting pliers. You can't cut those with either one of those, you've got to have a saw or a pair of bolt cutters. So what I said is going to look bad on us, the rodbusters too -- I don't want to say too lazy, but they -- they going too fast. They drill in, they head to hurry up and get done. They ain't going to take the time to go get something to cut it, it's just not in our DNA.

"Q. The -- the chairs, the bricks, the blocks, the rebar, the wire mesh, who supplies all of that material?

"A. So in this case it was Fessler & Bowman. Sometimes -- We was a lower tier sub. That means Fessler & Bowman was a contractor for the prime contractor, which [it] states many times in the contracting paperwork, prime contractor. So Fessler & Bowman had -- and we was a lower tier sub under Fessler & Bowman."

16

On a related note, Marina testified that he had never seen a piece of cut chair at the job site before his accident.

"Q. [Bama Reinforcing's counsel:] You had never seen a piece of a chair or a chair left on the ground before this accident happened, had you?

"A. No.

"Q. And you had never seen a chair cut -- a piece of it cut off on this job site?

"A. No.

"Q. And if somebody did deliberately cut a chair, you have no idea why somebody would do that, do you?

"A. Yes.

"Q. Well, do you remember I asked you about that in deposition?

"And I may have asked the wrong question, I apologize to you, sir.

"You don't have any idea if this -- if this piece of chair that we're talking about today, if it was cut off of a bigger piece, this thing, you don't have any idea who cut it, do you?

"A. Specifically who cut it?

"Q. Right.

"A. I don't know specifically who did it, no."

As to the second fact, Marina testified that he believed "the last day the rodbusters had been on site" was "the day before" his accident. Rodney Pate testified that he "believe[d] it was three days. We -- So we're going to say in between two to three days, no less than two days" between when Bama Reinforcing finished its "work area on the slab where Mr. Marina was injured to the point they [were] pouring concrete." Additionally, Marina testified that the accident occurred around 4:00 p.m. in the workday on November 9, 2021.

With respect to the third fact, Marina, Rodney Pate, and Daniel Pate each testified in a general fashion that all the workers engaged in the construction of the FBI building had a responsibility to clean up the job site. Specifically, Marina testified that it was "everyone's job" to "[m]ake sure the job site is organized and safe." Rodney Pate testified that he "received maybe one or two phone calls throughout the whole job saying, Hey, talk to your people, make sure they [are] getting a good clean up because the FBI is coming down on us a little bit, maybe one or two emails saying the same thing." Daniel Pate testified that "[e]verybody's told to clean" the job site because "people get hurt" if that does not happen.

18

In essence, the trial court reasoned that because Bama Reinforcing did not cut chairs, because Bama Reinforcing was not present or working at the job site on the day of the accident, because all workers had a duty to clean up the job site, and because the accident did not happen until near the end of the day after Bama Reinforcing had last been at the job site, Marina had not presented substantial evidence indicating that Bama Reinforcing was responsible for the presence of the piece of chair on the ground at the time Marina stepped on it.

The problem with the foregoing reasoning is that it fails to view the facts in the light most favorable to Marina. Marina unequivocally testified that Bama Reinforcing was the only contractor that used chairs in its work at the job site. "Rodbusting, you have tie wire, you have steel, you have chairs. And they [Bama Reinforcing] were the only one to do that discipline on the job." Marina also testified in the negative -- that other professions at the job site did not use chairs.

> "Q. [Marina's counsel:] What -- what's next to you, that piece of chair, that wire thing sticking up, do you ever have any reason to handle that when you're finishing concrete?

> "A. Never.

> "....

"Q. [Marina's counsel:] So you -- Had you seen carpenters work [on site]?

"A. Yes.

"Q. Do carpenters ever handle that?

"A. No.

"Q. You ever see -- who did you see handle that kind of stuff?

"A. Rodbusters."

Daniel Pate likewise testified that he did not know of any reason that a concrete finisher would handle a chair. Although Rodney Pate testified that plumbers and electricians often use chairs to "slide it under the uprights and … tie the uprights straight down to the chair to the bottom of the rebar to keep it all in place," he also admitted that he did not know if there were any plumbers or electricians working at the job site after Bama Reinforcing had finished its work the day before Marina's accident. Daniel Pate -- who was present at the job site every day that Bama Reinforcing performed work -- likewise testified that he could not remember if any plumbers or electricians were at the job site at that time.

More importantly, it was undisputed that Bama Reinforcing had a duty to clean up its work area after it had completed its assigned tasks.

Bama Reinforcing's contract with Fessler & Bowman required Bama Reinforcing to "remove from the areas in which it performs the Work, to the satisfaction of [Fessler & Bowman], all of [Bama Reinforcing's] rubbish, debris, materials, tools and equipment." Rodney Pate conceded that the piece of chair Marina had stepped on was "debris or rubbish," but he attempted to downplay that portion of Bama Reinforcing's contract with Fessler & Bowman by asserting that the piece of chair was "not Bama Reinforcing's debris or rubbish" because Fessler & Bowman supplied the chairs that Bama Reinforcing used in its rodbusting work. However, he also conceded that Bama Reinforcing had to clean up "[t]he mess that we make."

The trial court assumed that because Bama Reinforcing had not been at the job site on the day of Marina's accident, and because other workers also had a responsibility to clean up the job site, Bama Reinforcing could not be liable for the piece of chair left on the ground that caused Marina's injury. However, most cleanup work occurs at the completion of a particular crew's workday. As Marina testified:

> "[E]verybody['s] discipline will say -- if -- if we have an issue we're going to work, like, if we see a bunch of lumber, I'll go to my supervisor, which is a concrete foreman or supervisor, I will go to him -- or we'll go to them and say, Look, we can't go

21

in because it's a lot of debris. And then they would go and get their supervisor and say, Okay. We need to do a clean up job. So that -- that discipline would go and clean up their mess so that we can come in and do what I have to do."

Thus, the fact that Fessler & Bowman's concrete finishers may not have cleaned up their work area at the time of Marina's accident is unsurprising given that they had not finished their workday. But, according to Marina, just the day before his accident, Bama Reinforcing had completed its portion of the work in the area of the concrete slab that Marina and his coworkers were performing concrete finishing. Consequently, Bama Reinforcing had a duty to clean up its debris and rubbish at the end of its workday, and, according to Marina, Bama Reinforcing was the only contractor that used the chairs.

> "'"Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause." [Southworth v. Shea, 131 Ala. 419, 421, 30 So. 774, 775 (1901).]
>
> "'But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any

22

one of them, they remain conjectures only. On the other hand, <u>if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence</u>.'"

<u>Ex parte Diversey Corp.</u>, 742 So. 2d 1250, 1254 (Ala. 1999) (quoting <u>Southern Ry. v. Dickson</u>, 211 Ala. 481, 486, 100 So. 665, 669 (1924)) (emphasis added).

There is a logical sequence in the evidence indicating that only Bama Reinforcing used chairs, that its employees had worked in the same area the day before Marina's accident, and that it had a clear duty to clean up that area upon the completion of its work. Thus, the evidence points to Bama Reinforcing's negligent cleanup being the reason the piece of chair was left on the ground in the work area for Marina to step on. That Fessler & Bowman's employees also could be included in the causal chain because the job site had not been cleared of all debris and rubbish throughout the workday before Marina's accident does not exonerate Bama Reinforcing.

> "'The general rule is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons contributed to cause the injury to the plaintiff if the negligence of the defendant was an efficient cause, without which the injury would not have occurred. Stated differently,

23

> where a defendant is guilty of negligence which causes an injury, and the plaintiff is free from negligence contributing thereto, the fact that the negligence of a third person also contributed does not relieve the defendant from liability for his negligence.'"

Williams v. Woodman, 424 So. 2d 611, 613 (Ala. 1982) (quoting Watt v. Combs, 244 Ala. 31, 37, 12 So. 2d 189, 195 (1943)). The evidence indicates that Bama Reinforcing's negligent cleanup initially allowed the piece of chair to be present in the work area. Therefore, it is possible for Bama Reinforcing to be held liable for its alleged negligence. Accordingly, the trial court erred in entering a judgment as a matter of law in Bama Reinforcing's favor.

## IV. Conclusion

Contributory negligence was not a basis for the trial court's entering a judgment as a matter of law for Bama Reinforcing. Even if it had been, whether Marina was contributorily negligent was clearly a jury question. Moreover, because Marina presented evidence indicating that Bama Reinforcing was the only contractor that used chairs and that it had a duty to clean up the job site after completing its work, Marina presented more than conjecture or speculation as a basis for Bama Reinforcing's negligence being responsible for Marina's injury. Therefore,

24

we reverse the judgment as a matter of law entered by the trial court and remand the matter for a new trial.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Bryan, Mendheim, Stewart, and Cook, JJ., concur.

Mitchell, J., dissents, with opinion, which Wise and Sellers, JJ, join.

MITCHELL, Justice (dissenting).

To prevail on a negligence claim, a plaintiff must show that a defendant breached a duty owed to the plaintiff and that such breach caused the plaintiff's damages. See Mohr v. CSX Transp. Inc., 309 So. 3d 1204, 1209 (Ala. 2020). I agree with the majority opinion that Londell Marina, Jr., provided substantial evidence from which a fact-finder could find in his favor on three of the elements of his negligence claim: that Bama Reinforcing, L.L.C., had a duty to clean up the worksite after each day; that if Bama Reinforcing breached its duty by leaving a piece of cut chair at the worksite, that breach in turn could have caused his injury; and that Marina was damaged. But I do not believe that Marina offered substantial evidence of a breach, specifically, that Bama Reinforcing was responsible for the piece of cut chair that injured him.

The majority notes that there was evidence indicating "that only Bama Reinforcing used chairs, that its employees had worked in the same area the day before Marina's accident, and that it had a clear duty to clean up that area upon the completion of its work." ___ So. 3d at ___. It further reasons that this evidence creates "a logical sequence" that points to "Bama Reinforcing's negligent cleanup being the reason the

26

piece of chair was left on the ground in the work area for Marina to step on." ___ So. 3d at ___. But a gap exists in this sequence because there is no evidence indicating that Bama Reinforcing handled or failed to clean up the cut chair piece.

Several pieces of uncontroverted evidence at trial demonstrate how wide that gap is. First, Rodney Pate testified that Bama Reinforcing never cut chairs for any reason. Second, Marina himself testified that he never saw a chair being cut at the worksite, by Bama Reinforcing or anyone else. Third, when Marina was asked if he knew who cut off the piece of chair that injured him, he admitted: "I don't know specifically who did it, no." Finally, Marina offered no evidence indicating that Bama Reinforcing failed to clean up the worksite when it finished up. Thus, at most, a jury could only speculate that Bama Reinforcing either cut a piece of chair or handled and failed to pick up a cut chair piece. And "'"[p]roof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."'" Ex parte Diversey Corp., 742 So. 2d 1250, 1254 (Ala. 1999) (citations omitted). Here, the presence of the piece of chair

27

that caused Marina's injuries could "with equal probability be attributed" to individuals on the worksite who were not employed by Bama Reinforcing. For that reason, Marina failed to proffer substantial evidence pointing to a breach by <u>Bama Reinforcing</u>, and the trial court's judgment should therefore be affirmed.

Wise and Sellers, JJ., concur.